## Benjamin Bond, Exc'r of Edward Bond, *vs.* Thomas B. Conway.

*Bonds* or single bills, under seal, payable to *the wife*, and executed *during coverture*, unless reduced into possession by the husband *during his life*, survive to the wife, if living, and if not, pass to her representatives, under the act of 1798, ch. 101, sub-ch. 5, sec. 8, and the husband's executor cannot maintain a suit on the bonds against the obligors therein.

The fact that a suit was instituted on such bonds against the obligors therein, by the *executor* of the husband, proves that they were not reduced into possession by the husband, at the time of his death.

The *seal* to a bond or single bill, payable to a *feme covert*, imports consideration *as coming from the obligee, the wife*.

Appeal from the Circuit Court for Carroll county.

This was an action of *debt* brought by the appellant, as executor of Edward Bond, against the appellee. The declaration alleges that the defendant, on the 23rd of October 1848, by his certain writing obligatory, sealed with his seal, and to the court now here shown, "did promise to pay to *Eleanor Bond*, or order, the said *Eleanor* then and there being *the wife* of the said *Edward Bond*, since deceased," $100, with legal interest, twelve months after date; and also, on the 24th of October 1848, by his certain other writing obligatory, sealed with his seal, and to the court now here shown, "did promise to pay to *Eleanor Bond*, or order, the said *Eleanor* then and there being *the wife* of the said *Edward Bond*, since deceased," $100, with legal interest, twelve months after date; that the defendant has refused to pay "the said sums of money, or any part thereof, to the said *Edward Bond*, in his *life time*, or to the plaintiff since his death," &c.

To this declaration the defendant, after craving *oyer* of the bonds, filed a general demurrer, which the court (Nelson, J.) sustained, and gave judgment in favor of the defendant for costs, and from this judgment the plaintiff appealed.

The cause was argued before Eccleston, Tuck and Bartol, J.

*Wm. P. Maulsby* for the appellant:

This court has said, in *Peacock vs. Pembroke*, 4 *Md. Rep.*, 282, that no rule is better established than that at common law personal property, including *choses in action*, accruing to the wife *during coverture*, vests in the husband. See, also, 3 *G. & J.*, 97, *Glasgow vs. Sands*. 6 *H. & J.*, 31, *State vs. Krebs*. A note made payable to a *feme covert*, in the eye of the law, is a note to the *husband*, and becomes *instantly his property*. 17 *Maine*, 301, *Savage vs. King*. The question, therefore, of *survivorship*, which it was supposed arose in the case, does not, in fact, arise, for these bonds are not *choses in action* belonging to the wife, but are the *absolute property* of the *husband*. But, even conceding that the question of survivorship is to be considered, this right of the wife in cases of *choses in action* accruing to her *during the coverture*, only exists where it *appears* that the consideration for them came from her. Here nothing of the kind appears; the *nar* simply alleges that the bonds are payable "to *Eleanor Bond*, the said *Eleanor* then and there being the *wife* of the said *Edward Bond*, since deceased," and there is nothing to show that the consideration therefor came from her, or that she had any *equitable* title or claim thereto.

*Joseph M. Palmer* for the appellee:

The question of survivorship does arise in the case. The suit is brought on *these bonds* by the *executor* of the husband, and this clearly shows that the husband had not, in his *life time*, reduced them *into possession*. The *nar* alleges that the bonds are payable to *the wife*, and they were, therefore, her *choses in action*, in which the husband had only a *qualified* right, giving him the power to reduce them into possession, but in case he died *before doing so*, the right of the wife by survivorship accrues, and, under the act of 1798, ch. 101, *sub-ch.* 5, *sec.* 8, they pass to *her representatives*, in case she dies first, and the husband *afterwards* dies, before reducing them *into possession*. In regard to this right of survivorship, it makes no difference whether the *choses in action* be given to the wife *before* or *after* marriage; the principle is the same in both cases. Such is the law now settled in England by nu-

merous decisions. 1 *Bright on Husband & Wife*, 36, 38 1 *Wms. Exc'rs*, 606 to 608. 2 *Peere Wms.*, 496, *Coppin's Case*. 2 *Ves.*, *Sen.*, 677, *Garforth vs. Bradley*. 2 *Barn. & Adol.*, 447, *Richards vs. Richards*. 2 *Madd. Ch. Rep.*, 133, *Nash vs. Nash*. 12 *Ves.*, 497, *Baker vs. Hall*. The recent American decisions have settled the law in the same way. The case of *Hayward vs. Hayward*, 20 *Pick.*, 517, is a full and fair exposition of the law on the subject, and is well worthy a careful perusal, as it settles the question upon authority. See, also, 5 *Johns. Ch. Rep.*, 206, *Schuyler vs. Hoyle*. 2 *Brock.* 285, *Gallego vs. Gallego*. 4 *Rawle*, 177, *Wintercast vs. Smith*. 2 *Sergt. & Rawle*, 491, *Lodge vs. Hamilton*. 2 *Call.*, 447, *Wallace vs. Taliaferro*. 4 *Dessau*, 330, *Clifton vs. Haig's Exc'rs*. In our own State it would seem that the case of *Leadenham vs. Nicholson*, 1 *H. & G.*, 267, had put the question at rest, and is a case directly in point. The cases of *State vs. Krebs*, 6 *H. & J.*, 38, and *Peacock vs. Pembroke*, 4 *Md. Rep.*, 280, also fully sustain the right of survivorship of the wife before reduction into possession by the husband.

ECCLESTON, J., delivered the opinion of this court.

This action was instituted upon two single bills, each for one hundred dollars, one dated the 23rd of October 1848, and the other the day after. They were given by Thomas B. Conway, the defendant, to Eleanor Bond, then the wife of Edward Bond. The husband has died since, and the suit was brought by his executor, Benjamin Bond, on the 4th of August 1853.

The *nar* states the causes of action as having been given by Conway to Eleanor the wife, that Edward, the husband, has since died, and that the defendant hath not paid the money to him in his life time, or to the plaintiff since the decease of the said Edward.

The defendant demurred to the *nar*, and after joinder in demurrer, the court gave judgment in favor of the defendant; from which the plaintiff appealed.

Whether the wife died before or after her husband, or is still living, does not appear.

The appellant claims a reversal of the judgment, upon the ground, that these *choses in action* having been given to the wife during coverture, they immediately became the absolute property of the husband, without any necessity for his reducing them into possession during his life; and passed to his executor upon his decease, whether the wife survived him or not. It is therefore insisted, that no question growing out of the doctrine of survivorship, as between husband and wife, can present any valid objection to the plaintiff's right of action.

But the defendant contends that these *choses in action* were only conditionally the husband's property, being subject to the wife's right of survivorship. And unless he reduced them into possession during his life, they passed to the wife, if living, and if not, to her representative.

This suit being instituted in the name of the executor, proves that the *choses in action* were not reduced into possession by the husband, at the time of his decease; at which time the wife, if living, and if not, her representative, became entitled to them; the executor of the husband having no claim whatever, whether the wife or the husband was the survivor. And as the present plaintiff never had any claim to the causes of action he cannot maintain the suit.

The question before us has occasioned much discussion, and many conflicting decisions on the subject are to be found.

In reference to *choses in action* belonging to the wife when married, it is well settled, that they do not vest in the husband absolutely. By the marriage he only acquires an *inchoate* or conditional right; he may reduce them into possession and apply the proceeds to his own purposes; but if the wife is the survivor, and the *choses in action* remain not reduced into possession, she is entitled to them, and they do not pass to his representatives. And in Maryland, by the act of 1798, ch. 101. sub-ch. 5, sec. 8, it is provided, that where the husband survives the wife, if he shall not, in his life time, reduce her *choses in action* into possession, or obtain judgment upon them, they shall devolve on her representative, and administration may be granted accordingly.

A different rule has been supposed to exist, when *choses in action* instead of belonging to the wife at the time of marriage, accrue during coverture.   They are said to vest absolutely in the husband, without being reduced into possession, and in the event of his decease do not survive to the wife.

This question was presented, and very fully considered, in the case of *Hayward vs. Hayward*, 20 *Pick.*, 517.  In delivering the opinion of the court, Dewey, J., says, at page 530: "It seems to me, upon a careful review of all the cases in which this subject has been incidentally or otherwise before this court, that the adjudications are not of so controlling and decisive a character, as to preclude us from the full consideration of the question, upon general principles and with reference to the decisions of other judicial tribunals, and the opinions of learned commentators.   The result of such a consideration of the question now presented for our adjudication, is a full conviction on our minds that there is no such distinction as to rights of survivorship by the wife, between those *choses in action* that accrue before and those that accrue during coverture, as is claimed by the counsel for the administrator of the husband, but that, in either case, if the husband die without reducing them to possession, they survive to the wife.  Such I apprehend is the well settled law of England, and the same doctrine has been distinctly recognized in the States of New York, Pennsylvania, South Carolina and Virginia.   It has had the sanction of *Lords Hardwick* and *Tenterden,* in England, of *Chief Justice Marshall, Chancellor Kent,* and many other eminent jurists in this country."

Concurring in the principle adopted in that case, we deem it unnecessary to present a minute examination of the various conflicting decisions upon the subject.   But we will refer to 1 *Williams on Ex'crs*, 718, 723, sec. 3, *(Ed. of* 1849.)   1 *Bright on Husband & Wife,* 36, 37 and 38, *sec.* 2, *(Ed. of* 1849.)

In support of the plaintiff's right of action, his counsel has referred to the following cases: *State vs. Krebs,* 6 *H. & J.,* 31; *Glasgow vs. Sands,* 3 *G. & J.,* 97; and *Peacock vs. Pembroke & Clarke,* 4 *Md. Rep.,* 280.  But we do not consider them as in-

consistent with the view we take of the case before us. In the first and third, the husband and wife were both living; and although, in the second, the wife had died, the husband was still living; and, consequently, in neither of them could the right of survivorship in the wife, be successfully opposed to the suit of the plaintiff, claiming through the living husband.

In *State vs. Krebs*, by a proceeding under the act to direct descents, real estate of the wife was sold and the purchase money paid to the commissioners, upon which an attachment, at the instance of a creditor of the husband, was laid in the hands of the commissioners. The court there held, that the mutation of the wife's property, from real to personal, was complete when the sale by the commissioners was ratified by the court, and the purchaser had complied with the terms of sale by paying the money. And the court say: "Let the law be considered as settled, that the husband may sue in his own name, for money situated as this is in the hands of the commissioners, and it seems to follow necessarily, that it may be attached by the husband's creditor to satisfy a debt due by him." And although the court, in conclusion, speak of the money as being at the disposal of the husband, as being his in truth and in law, and liable for his debts, they nevertheless acknowledge the wife's right, in the contingency of her surviving her husband, before any appropriation is made of it by him.

In *Glasgow vs. Sands*, under the will of P. G. Browning, his daughter Mary Ann Browning, became entitled to a portion of his personal estate. After which she married G. W. Bailey, and died subsequently; no part of her share of her father's estate having been paid. Bailey, the surviving husband, became an insolvent petitioner, and his trustee, Sands, claimed from Glasgow, the administrator *d. b. n.* of P. G. Browning, the portion of the estate which Mary Ann Browning became entitled to under the will of her father. Thus it will be seen, that the *chose in action* in controversy, accrued to the wife before marriage and not after.

The second question as stated by the court is, "whether a *chose in action* of a deceased wife, is vested in the trustee of her surviving husband, an insolvent petitioner."

After quoting a portion of the 8th section of sub-ch. 5, of the act of 1798, ch. 101, the court say: "Under the provision of the act of Assembly, Bailey might have collected the claim now in controversy, and have applied the same to his own use; he was competent to release, compromise, assign or dispose of it, in any way he might see fit; and to all the purposes of this controversy, it is to be regarded in the same light as if it were a debt or *chose in action*, due to Bailey himself, and consequently vested in the appellee, upon his giving bond as required by law. The statutory assignment of the petitioner's estate, is, of all property which he has a claim, title to, or interest in, and of all debts, rights and claims, which he has or is in any way entitled to."

*Peacock vs. Pembroke & Clarke,* is a case in which an attachment was issued, at the instance of a creditor of the husband, and laid in the hands of Pembroke, who had given his bonds to the wife, for purchase money due for lands of the wife sold to him by the husband and wife. This court sustained the attachment, upon the authority of the *State vs. Krebs,* considering that case as being directly in point.

Because, the court say, "No rule is better established than that, at common law, personal property accruing to the wife during coverture, including *choses in action,* vests in the husband, on the principle that husband and wife are but one in law, and her existence, in legal contemplation, is merged in his," the plaintiff's counsel construes this language as meaning, that such *choses in action* vest absolutely and unconditionally in the husband, and subject to no right of survivorship in the wife. But this seems to be a strange construction, when, in the next preceding sentence, the court are careful to remark: "It will be observed, that no question of survivorship arises in this case." What was the necessity for, or propriety in making this remark, if the court designed immediately after to say, the husband is the absolute unconditional owner of all *choses in action,* accruing to the wife during coverture, free from any right of survivorship in the wife? The language must be understood as having reference to the particular case then before the court, in which the facts did not raise any

question of survivorship, inasmuch as both husband and wife were living.

No question of this sort could properly arise in either of the three cases last noticed. In each of them there was a transfer or assignment of the *chose in action*, by law, during the life of the husband, which, of course, destroyed any right of survivorship in the wife; as the transfer or assignment by law, amounted to an appropriation through the husband whilst living.

In regard to *choses in action* which accrue during coverture, the plaintiff's counsel has argued, that the wife's right of survivorship exists only where it appears the consideration for them proceeds from her. Admitting this to be a correct legal proposition, it could not be of any avail to the present plaintiff. The *choses in action* before us are single bills; the seals to which import consideration as coming from the obligee, the wife; and in this suit at law, with a demurrer to the *nar*, there is nothing to contradict or controvert the legal presumption, as to the consideration, arising from the instruments themselves.

*Judgment affirmed.*