FRANCIS H. STUBBS, Rector, *vs.* THE VESTRY OF ST. JOHN'S CHURCH, Huntingdon.

*Religious Societies—Power of the Vestry of a Protestant Episcopal Church to Remove the Rector.*

The vestrymen of a Protestant Episcopal Church incorporated under the Act of 1802, ch. 111, constitute the body corporate and not the congregation of the church.

The charter of St. John's Church provides that the vestry shall have power to appoint the rector and to perform all the duties which belong to vestrymen by the canons and usages of the Protestant Episcopal Church in the United States, but makes no regulation concerning the removal of the rector. *Held*, that the power to remove the rector resides in the vestry which appointed him.

Where a rector of an Episcopal Church was appointed by the vestry for

no definite period and neither the statute law, nor the charter prescribes the duration of his term of office, such appointment is at the will of the vestry, and the relation of the rector to the church may be ended upon reasonable notice.

When a vestry adopted on May 22nd, a resolution terminating the relation of the rector to the parish on July 30th, following, such notice is sufficient, and the rector was not entitled to previous notice that the vestry would consider the question of terminating his term of office.

Appeal from a decree of the Circuit Court of Baltimore City (Harlan, C. J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*Wm. Pinkney Whyte,* for the appellant.

It is conceded that, as provided in the second chapter of the Articles of Incorporation, the " said church or congregation, its rector and vestry, shall at all times adhere to and observe the doctrine, worship and discipline of the Protestant Episcopal Church in the United States of America, as set forth in its creeds, articles, liturgy, constitution and canons," and that under Canon 4, title 2, of the Digest of the Constitution and Canons of the General Convention, *wherever the same is in force,* its provisions must be observed. The rule is well stated in *White's American Church Law,* p. 240 : " A minister called to the rectorship of a parish, in the absence of any express agreement, limiting the tenure of such office is called for life. This is the undoubted law of the English Church." *Burns' Ecc. Law,* vol. 3, p. 542; *Blunt's Book of Church Law,* p. 246; *Cripp's Law of the Clergy,* p. 543.

"By both the canon and common law it was well settled that an incumbent once duly instituted was in for life, and could not be removed by the patron. He could only be dismissed upon a just sentence. The authority of Lord Coke as to the common law is frequently given." *Hoffman's Law of the Church,* p. 333.

This is general ecclesiastical law. This is also the law of the American Church, title 2, Canon 4, sec. 1 of the digest,

and has been so declared by the civil Courts. In *Jennings, etc.,* v. *Scarborough, etc.,* 56 N. J. L., 401, the Court held if a minister be called to the rectorship of a parish, and the call be without limitation as to time, "it is admitted that under such a call the tenure is for life, unless terminated by mutual consent, or the pastoral relation is dissolved as provided for in the canons."

While the vestry have power to elect a rector, they have no power to remove him; the contract is for life, and is determinable only by mutual consent or by the lawful authority, duly exercised, of the bishop of the diocese. *Sheldon* v. *Parish, etc.,* 41 Mass. 281 ; *Youngs* v. *Tansom,* 31 Barb. Rep. 49. Nor can the vestry indirectly remove him by a reduction of his salary. The right to the salary stipulated in the call is a valuable property right secured to the rector by contract. *Bird* v. *St. Mark's Church, etc.,* 62 Iowa, 567; *Worrell* v. *First Pres. Church,* 8 C. E. Green, 96. These questions have been most exhaustively considered by Dr. Hawks, in his work on *Constitutions and Canons of the Church,* pp. 280–87. He considers that the instituted rector cannot be dismissed from his charge without the concurrence of the ecclesiastical authority of the diocese, nor without such concurrence leave his congregation against their will.

Such is the view of the Courts in those dioceses where Canon 4, title 2, is in force. A parish of the Protestant Episcopal Church, by its admission into union with the diocese of Iowa and its connection through that with the Protestant Episcopal Church of the United States, acknowledging the authority of the constitution and canon of that church and becoming amenable thereto, and according to these canons, a rector canonically elected and in charge may not be removed by his parish against his will. *Bird* v. *St. Mark's Church of Waterloo,* 62 Iowa, 567.

It will be seen from the case of *Bartlett* v. *Hipkins,* 76 Md. 5, that Canon 4, title 2, applied to the rector of a *parish,* and to a *parish vestry,* and, it did *interfere* with the Act of 1798, chapter 24, incorporating vestries in the Protestant Episcopal

Church; and, therefore, the rector of St. Matthew's Parish, in Garrett County—the incorporation of whose vestry was made under the Act of 1798, chapter 24—held his position under a contract entered into in conformity with that Act. So the canon was declared not to be in force in regard to the *rector of a parish.*

But the "Vestry of St. John's Church, Huntingdon, Baltimore County," is not a parish vestry, nor is the rector the rector of a parish; on the contrary, St. John's Church, Huntingdon, Baltimore County, is a *separate congregation,* belonging to the "Protestant Episcopal Church," incorporated under the provisions of the Act of Assembly, of the State of Maryland of 1802, ch. 111, entitled "An Act to incorporate certain persons in every Christian Church or Congregation in this State," and the supplements thereto; and certain persons were constituted by that Act a body politic or corporate to act as trustees and vestrymen, in the name and behalf of the said particular congregation, called "St. John's Church."

This Act of 1802, chapter 111, has been recognized by the conventions of the Protestant Episcopal Church in Maryland, as creating corporations entirely different from the parishes and vestries organized under the Vestry Act of 1798, chapter 24.

The Act of 1802, chapter 111, was "intended to promote the cause of religion by conferring on 'religious societies equal rights and privileges in all things concerning the temporality and government of their churches, congregations and societies,' and without disturbing private opinions, or affecting the right of judgment in matters of religion, and make provision for their several exigencies in affairs of a temporal or civil nature, as far as difference of circumstances would admit. Such is the tenor of the whole preamble to the Act, confining the intended privilege to associating christians in their profession of faith, but under that designation extended to *every church, society or congregation. Neale* v. *The Vestry of St. Paul Church,* 8 Gill, 116; *Runkel* v. *Winemiller,* 4 H. & McH. 287.

Religious societies, incorporated in the States are not ecclesiastical corporations in the sense of the English law, but are

civil corporations, governed by the ordinary rules of the common law. The society is incorporated; the members are the incorporators; the trustees are the managing officers, in the same relation that the directors of a manufacturing or like corporation are. *Calkins* v. *Cheney*, 92 Ill. 463. A religious society, incorporated under the general Act of 1813 (April 5), is a corporation of all the members of such society and not of the trustees or a limited portion of its members. *Green* v. *Prussia, etc., Society*, 36 N. Y. 161.

The trustees of an eleemosynary corporation cannot remove one of their number in the absence of an express power so to do, because of the incongruity of their possessing the power to *remove each other*. *Fuller* v. *Trustees*, 6 Conn. 532. In the case of an amotion of a corporator, a general summons to every member is not sufficient, but that it is necessary to mention, that *it is intended to consider the question of removing the particular person*. Perhaps, even, this will not be sufficient, but it may be necessary to state the *cause* of his intended amotion. 2 *Bacon's Abridgment*, 462 Am. ed., 1843. Where it is intended to remove any one of the members or officers of a corporation, it is, in general, absolutely necessary, not only that he should be summoned generally to attend; but he must have a particular summons to attend and answer the particular charge alleged against him: for it would be highly unjust, upon a general summons, to remove a man for particular offenses which he may have had no opportunity of preparing to answer. 2 *Bacon's Abridgment*, 463; *James Bagg's case*, 11 Co. 99A; *Glyde's case*, 4 Mod. 33, 37; *Conn.* v. *Penna. Beneficial Asso.*, 2 Serg. & Rawle, 141.

The power of amotion is judicial in its character and generally exercised by the Courts of the land, though it may be given to the corporation by its charter, and even if the charter is silent, an officer or corporator in some classes of corporations may be expelled for sufficient cause. But it is essential, in every case, that charges be made, a trial had, and that the accused be notified and have a full opportunity for defense. *State ex rel. Pittman* v. *Adams*, 44 Mo. 372.

*Edward N. Rich,* for the appellees.

*The congregation has no power to elect, appoint or remove the rector.* It is well-settled that in a corporation organized under the Act of 1802, ch. 111, the vestry or trustees, and not the congregation, constitute the body corporate. *Bethel Church* v. *Carmack,* 2 Md. Ch. 143; *Tartar* v. *Gibbs,* 24 Md. 323.

The preambles of this Act show that its obvious purpose was to provide a way by which religious societies should be empowered to hold and acquire property, and to enter into engagements of a civil or temporal nature, in a corporate capacity ; and its provisions indicate the utmost care on the part of the General Assembly to avoid any interference with, or restriction upon, the religious constitution or government, or the discipline of any church or society. This is clearly expressed in sec. 13, and was so held in *Tartar* v. *Gibbs,* 24 Md. 323.

Speaking generally, the power to appoint carries with it the power to remove, and the power to remove, resides generally in the body having the power to appoint. *Thompson on Corporations,* sec. 805; *People ex rel. Stevenson* v. *Higgins,* 15 Ill. 110. If the term of an officer of a corporation is not fixed by charter or general law, or by the by-laws of the corporation, and he is elected or appointed without any provision or agreement as to his term, he holds the office at the pleasure of the corporation. He may be removed at any time, and by the officers by whom he was appointed, and the directors have implied authority to remove all officers appointed by them. *Clark & Marshall on Private Corporations,* secs. 665 and 666; *In re Griffin Iron. Co.,* 63 N. J. L. 168.

The term of this rector is not fixed by the statute law or by the charter. It is simply an employment at the salary of fifteen hundred dollars per annum. Such an employment is for but an indefinite term, and may be terminated on reasonable notice. *McCullough, &c., Co.* v. *Carpenter,* 67 Md. 557; *Prentiss* v. *Ledyard,* 28 Wisc. 131; *Bartlett* v. *Hipkins,* 76 Md. 1.

The constitution of this vestry provides that the vestry shall have all the powers and duties that belong to a vestry under

the usages of the Protestant Episcopal Church in this State, and it further provides that the congregation shall be regulated by such usages and the laws of the State of Maryland applicable to said church ; and that the constitution itself shall be construed according to such usages and laws.　In the *Hipkins case*, it is clearly shown that under such usages, established by public statute of this State for more than a century, the vestry have full power to remove the rector.　Not only does the constitution of this vestry make the usages a part of it, but the construction, placed by the church at large in this State upon the rights and powers of a vestry incorporated under such a constitution and the Act of 1802, has long been that such a vestry has *ex vi termini* all the powers of a vestry incorporated under the Act of 1798, except where special legislation may have made a difference.

This was the opinion given to the Convention of the Diocese of Maryland in 1858 by Judge Chambers and J. Mason Campbell, Esq., in a report on " The Legal Question of the Capacity of Vestries under the Present Practice in this State." *Compilation of Constitution and Canons of the Protestant Episcopal Church in the Diocese of Maryland*, ed. of 1898, p. 48.

The question in this case being simply one of amotion from office, if the plaintiff was entitled to any special notice, the character of such notice and the failure to give it to him must be clearly alleged in his bill.　The allegations of the bill on this point are, (sec. V) that he has not received any reasonable and timely notice of the vestry's intention.　This is but the allegation of the pleader, and not the statement of a fact. He does not allege that he received no notice, general or special, of the meeting held May 22nd, 1902.　The resolution passed at that meeting indicates, we submit, that it was the final act of the vestry in terminating the plaintiff's rectorship, and that it had been preceded by some other action in the matter.　Although the plaintiff was a member of the corporation, and must therefore have had notice of that meeting, he does not admit or deny that he had any such notice.　The bill does not, therefore, contain a full disclosure of all the

facts within the plaintiff's knowledge, and it conceals the important fact of just what notice he did have of the meeting held May 22nd, and the purpose for which that meeting was called. This lack of frank and candid disclosure of all the facts, and this evident concealment of an important fact, is sufficient to disentitle him to the injunction. *Sprigg* v. *Western Tel. Co. et als.*, 46 Md. 67.

McSHERRY, C. J., delivered the opinion of the Court.

This is an application by bill in equity for an injunction to restrain the defendants, who are the appellees in this Court, from hindering the plaintiff, who is the appellant, in the exercise of his office as rector of Saint John's Protestant Episcopal Church and from debarring him from access to said church. The injunction prayed for was refused and the bill of complaint was dismissed. From that order the appeal now before us was taken. The question is : "Does the case made by the allegations of the bill entitle the appellant to the relief which he seeks ?"

The bill avers that "the Vestry of Saint John's Church, Huntingdon, Baltimore County," was incorporated under the *Act of Assembly of 1802, ch. 111 :* That on October the first, eighteen hundred and seventy-nine, the appellant was "appointed," in pursuance of the ninth clause of the Articles of Incorporation, rector of Saint John's Church at an annual salary of fifteen hundred dollars with the right of occupancy of the rectory rent free, and the use of the library and furniture therein, and that he has held that office ever since and is a a lawful member of the "corporation or vestry," and is the president thereof, and has control of the church edifice with the right of ingress and egress for the purpose of celebrating the rites and ceremonies prescribed by the canons of the Protestant Episcopal Church of the Diocese of Maryland. That on May the twenty-second, nineteen hundred and two, the vestrymen attempted by a resolution to remove the appellant from the office of rector without any action of the congregation and without any notice to the congregation conven-

ing a meeting for such purpose; that the appellant believing himself entitled to hold the said office of rector of the said church and president of the said corporation until removed by the congregation itself, according to the laws of this State, declined to recognize the legal authority of the vestrymen to oust him from his office; and that even if the vestry had the power to remove him the attempt to do so would be against equity for as much as his salary was largely in arrear and he did not receive any reasonable and timely notice of their intention to sever his relation as rector of said church and the congregation worshipping therein. The bill further alleges that the appellant has been informed and believes that the vestrymen have threatened and are about to take proceedings to bar him from exercising his rights and duties as rector of said church. The prayer is for an injunction as already stated. Accompanying the bill as an exhibit, and therefore forming part of it, was a copy of the Articles of Incorporation of the vestry of Saint John's Church.

It may not be amiss to observe at the outset that this controversy does not involve any ecclesiastical question or any question of ecclesiastical law; but it concerns the construction of an Act of Assembly and the charter or constitution of St. John's Church; and has relation to nothing more than a discussion of the ordinary powers of a private corporation. Keeping this fact in view there are two fundamental inquiries presented, and the solution of them will dispose of the case. *First*. Who constitute the corporation—the members of the congregation or the vestrymen? *Secondly*. What are the powers of the body corporate with respect to the appointment and removal of a rector, and incidentally as included therein, what are the rights of the rector under such an appointment as is stated in the bill?

Since the decision by the Chancellor in *Bethel Church* v. *Carmack*, 2 Md. Ch. Dec. 143, and by this Court in *Tartar et al.* v. *Gibbs et al.*, 24 Md. 323, it must be regarded as finally settled that the vestry and not the congregation is the body corporate. Indeed, this is made obvious by the terms of the

*Act of 1802, ch. 111.* In the case last cited this Court said: "*The Act of 1802, ch. 111,* entitled 'an Act to incorporate certain persons in every Christian Church or congregation in this State' does not as in some other States incorporate the congregation or society, but provides ' that in every Christain Church or congregation, etc., there shall be and remain sufficient power and authority, in all male persons above twenty-one years of age, belonging to any such church, etc., to elect at their discretion, certain sober and discreet persons, not less than five nor more than thirteen, which persons so elected shall be and are hereby constituted a body politic or corporate upon being registered as hereinafter directed, to act as trustees in the name and behalf of the particular church for which they are chosen and to manage the estate, interest and property of the same in the most upright manner, and shall have perpetual succession and shall by their name of incorporation have power to sue and be sued.' * * * * * The persons elected under the Act of incorporation, constitute a body politic and as such act as trustees holding the estate in perpetual succession, &c." By the sixth Article of the certificate or deed of incorporation, as it is called, it is declared : " The corporation or vestry of the church shall consist of the minister for the time being, who shall be called the rector, and eight laymen, who shall be called vestrymen, and the name of the corporation shall be ' The Vestry of St. John's Church, Huntingdon, Baltimore County. ' " Pursuant to the statute eight members of the congregation were elected in eighteen hundred and forty-four as vestrymen and they executed the deed of incorporation, and the succession has been kept up by an annual election of four members as provided for in the seventh clause of the charter. These vestrymen and not the members of the congregation constitute the corporation. The title of the *Act of 1802, ch. 111,* declares that the Act was passed, not to incorporate *congregations,* but to incorporate *certain persons in* every congregation ; and the first section provides in clear terms that the power residing in the congregation shall be the power to elect certain sober and discreet persons, " *which per-*

*sons* so elected *shall be and are hereby constituted a body politic or corporate* upon being registered" as therein directed. It would do violence to the plain language of the statute and would overrule the explicit decisions in *2 Md. Ch. Dec.*, and *24 Md. R.*, were it now held that the congregation and not the vestry is the body corporate.

*Secondly.* As to the powers of the body corporate with respect to the appointment and removal of the rector. By the ninth clause of the deed of incorporation it is provided: "The vestry shall have power to appoint the rector; to fill up vacancies in their own body; to appoint church wardens and other officers of the church; and to perform all offices and duties which belong to a vestry or the vestrymen by virtue of the constitution, canons or usages of the Protestant Episcopal Church in the United States of America, &c." Here, then, is a distinct power conferred in express terms upon the *vestry* to appoint the rector. Where does the power to remove him reside? Inasmuch as his appointment is a corporate act, his removal must also be, unless expressly otherwise provided. But the congregation is not the corporation and obviously, therefore, the congregation cannot exercise the corporate act of removal unless expressly empowered to do so. Speaking generally it is an accepted principle of law applicable to private corporations, that the power to appoint to an office included the power to remove the incumbent so appointed, unless the power of removal is expressly lodged in some other body. "Where the officer holds during the pleasure of the appointing power, or where the power to remove is discretionary the power to appoint carries with it the right of amotion by the appointing officer or board, which may be exercised without notice or hearing." *2 Am. & Eng. Ency. L.* (2d ed.), 314 and cases in note 1; *Ex parte Hennen*, 13 Pet. 230. If we had, then, nothing before us but the ninth clause of the charter, it would be indisputable that the vestry which is entrusted with the sole power of appointing the rector, is likewise clothed with the exclusive right to remove him. But there are other clauses of the charter, which by a process of

exclusion make this position morally certain. The power to remove must vest somewhere, for it cannot be assumed or conceded that it does not exist at all. If it does not abide in the appointing body, either by express grant or as an incident of the power to appoint, it must be found outside of that body. It is not pretended by the appellant that the power to remove has been committed to any other body than the congregation. Now, if that power resides in the congregation it must so reside by reason of there being an express delegation of it to the congregation, because the congregation is a mere aggregation of individuals incapable of exercising any corporate act and possessing no authority to do an act *for* the corporation unless expressly empowered to perform it. The rights which the *Act of 1802, ch. 111*, and the charter reserve to the congregation are extremely limited. The congregation is given the right to elect the incorporators and their successors; the right to adopt a constitution, to alter and amend the same and to inspect the books of the body corporate. The seventh article of the charter after naming the first vestrymen proceeds to provide for the election of their successors and declares that " they," the members of the congregation " or such of them as may assemble shall by a majority of votes, put out four of the eight vestrymen, whom they please, and shall immediately thereafter elect by ballot four vestrymen from among the persons qualified to vote, including those whom they have voted out, all or any of whom they may re-elect; and such persons, so chosen, with the remaining vestrymen and the rector shall be the vestry for the ensuing year." Now, as the eight vestrymen must be laymen, and as the only members of the vestry whom the congregation can vote out are, each year, four of the eight laymen, it of course necessarily follows that the ninth member, who is the rector, and therefore a clergyman, cannot be voted in or *voted out* by the congregation. By expressing declaring that the *lay* members of the vestry can be voted out by the congregation, the power to vote any one else out is denied to the congregation; and consequently the right to remove the rector has not only not been conferred

upon the congregation, but has been withheld from it.    It follows, then, that the power to remove the rector is confided to the body corporate—that is, to the vestry; and the only remaining inquiry is as to the rights of the appellant under his original appointment.

The appellant was not chosen for a definite or fixed term. He was simply appointed rector.    Neither the statute law nor the charter prescribes the duration of his term.   Such an ap-. pointment is at will and may be ended upon reasonable notice. " There can be no doubt that, in this country, the rule is, an indefinite hiring is *prima facie* a hiring at will.    *    *    *    * It is competent for the parties to show what the mutual understanding was, but unless there was a mutual understanding, it is only an indefinite hiring." *McCullough Iron Co.* v. *Carpenter*, 67 Md. 557.    The notice of removal was reasonable. The bill does not allege that the appellant had no notice of the meeting of the vestry which was held on May the twenty-second, nineteen hundred and two.    On that day a resolution was adopted terminating the relation of the appellant as rector to take effect on July the thirty-first following, and on the day of its adoption a copy of the resolution was transmitted to the appellant.    A shorter notice was held sufficient in *Bartlett* v. *Hipkins*, 76 Md. 5. . The relation of the appellant to the vestry was a contractual one.    His employment was at the will of the vestry.    He had no vested right to the office or its incidents and was consequently not entitled to notice that the question as to the severing of that relation would be considered by the vestry.    The case at bar is wholly unlike *Weber et al.* v. *Zimmerman*, 22 Md. 156.    There the power of removal was vested in the congregation and the constitution of the church provided that a call for a meeting of the congregation should give information of the object of the meeting. This requirement was not observed and consequently the action of the congregational meeting in removing Mr. Zimmerman, the pastor, was irregular and void.    That is the distinct ground on which the decision is put though there are some general observations in the opinion with respect to

the right of amotion that would require examination and perhaps qualification if they affected the correctness of the judgment pronounced.

After a careful consideration of the record we are satisfied that the lower Court was right in refusing to grant the injunction asked for and its action will be affirmed.

*Order affirmed with costs.*

(Decided January 16th, 1902.)