*R. James Vaughn v. Faith Bible Church of Sudlersville, et al.*
No. 1258, Sept. Term 2019
Opinion by Shaw Geter, J.

**Constitutional Law**

The First Amendment does not prohibit civil courts from resolving all church disputes, but only those concerning questions of discipline, or of faith, or ecclesiastical rule, custom, or law. U.S. Const. Amend. 1.

**Constitutional Law**

Neutral principles of law, developed for use in all property disputes, can be applied to resolve religious organizations' secular disputes requiring an interpretation of corporate charters or bylaws without violating the First Amendment. U.S. Const. Amend. 1.

**Corporations and Business Organizations**

A corporation has only such powers as are expressly granted by its charter or by statute and such as may impliedly be derived from its corporate purposes.

**Religious Societies**

The purpose of religious corporations is to enable the church to attend more readily and efficiently to their temporal affairs, without any power or authority to interfere with forms of worship, articles of faith, or any other matter, relating strictly to spiritual concerns.

**Religious Societies**

The powers of a religious corporation are not limited to those specifically provided in the Maryland Religious Corporations Article, but are part of the Maryland Corporations and Associations Article, which confers "general powers" upon corporations, including religious corporations, to perform acts that are consistent with their charters.

**Religious Societies**

In the absence of any provision otherwise, a religious corporations' Board of Trustees is the body corporate, not the congregation.

**Religious Societies**

When there is no evidence that a religious corporations' Board of Trustees' decision is based on religious doctrine, biblical interpretations or other ecclesiastical matters, civil courts are permitted to resolve such disputes.

Circuit Court for Queen Anne's County
Case No. C-17-CV-19-000089

R. JAMES VAUGHN

v.

FAITH BIBLE CHURCH OF
SUDLERSVILLE, ET AL.

Leahy,
Shaw Geter,
Eyler, James R.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Shaw Geter, J.

Filed: November 19, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This is an appeal from a declaratory judgment action in the Circuit Court for Queen Anne's County. Following a trial, the court entered a memorandum opinion and judgment, finding and declaring that appellee, Faith Bible Church of Sudlersville, *et al.*,[1] acted within the scope of its corporate and statutory authority when it terminated the tenure of appellant, R. James Vaughn, as pastor of Shore Haven Baptist Church.

Appellant timely appealed and presents the following questions for our review:

1. Does the Maryland Religious Corporation Act permit the Shore Haven religious corporation trustees to terminate the pastor of Shore Haven Baptist Church?

2. Does the Maryland Religious Corporation Act permit the Shore Haven religious corporation trustees to control the membership of Shore Haven Baptist Church?

For reasons discussed below, we affirm the judgment of the circuit court.

Preliminarily, we note that appellant's Question II, regarding membership of the church, was not raised in the court below. Under Maryland Rule 8-131(a), "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." The "twin goals" of Rule 8-131(a) are: "(1) whether the exercise of its discretion will work unfair prejudice to either of the parties," and "(2) whether the exercise of its discretion will promote the orderly administration of justice." *Cave v. Elliott*, 190 Md. App. 65, 83 (2010) (quoting *Jones v. State*, 379 Md. 704, 713–15 (2004)) (internal quotation

---

[1] Appellee changed its corporate name on June 3, 2019, from Shore Haven Baptist Church of Sudlersville, Maryland to Faith Bible Church of Sudlersville, after the Complaint was filed.

marks omitted).  The threshold inquiry for unfair prejudice is whether the issue is purely a legal question and "does not depend on the presentation of additional evidence." *Cave v. Elliott*, 190 Md. App. at 84 (quoting *Gen. Motors Corp. v. Seay*, 388 Md. 341, 364 (2005)). The second inquiry is "whether our review will promote the orderly administration of justice." *Id.*

Here, the record reflects that no evidence was presented on this issue, arguments were not heard, and the trial court did not make a ruling.  Any review by this Court, therefore, would be advisory, unfairly prejudicial, and would not promote the orderly administration of justice where first level fact finding is reserved for the trial courts.  We, therefore, decline to exercise our discretion.

## BACKGROUND

In the summer of 2016, John M. Stoltzfus began discussions with Pastor Michael Creed of Independent Baptist Church (IBC) regarding his desire to found a local Baptist church.  During their negotiations, it was agreed that Creed's son-in-law, appellant, would serve as pastor of the new church.  At a meeting in October 2016, Creed, Stoltzfus, and three additional parties signed articles of incorporation.

On November 15, 2016, the Maryland Department of Assessments and Taxation accepted Articles of Incorporation for Shore Haven Baptist Church of Sudlersville, Maryland from appellee,[2] filed under the Maryland Religious Corporations Law, *see* Md.

---

[2] Md. Code Ann., Corps. & Ass'ns § 5-301(b) defines "church" as "any church, religious society, or congregation of any sect, order, or denomination."

2

Code Ann., Corps. & Ass'ns § 5-304.[3]  The first section of the Shore Haven Articles of Incorporation provides that five signatories: Pastor Creed; Patrick Lee Creed, Sr.; Jon J. Rediger; Stoltzfus; and Jonathan Stoltzfus, Stoltzfus's son, have been:

> elected by the members of the congregation of Shore Haven Baptist Church of Sudlersville, Maryland to act as trustees in the name and on behalf of said congregation do hereby associate ourselves as incorporators with the intention of forming a religious corporation under the general laws of Maryland

The third section of the Shore Haven Articles of Incorporation defines the corporation's purpose:[4]

> The Corporation is organized as a church exclusively for religious, charitable, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 (or the corresponding provision of any future United States Revenue Law), including for such purposes, but not limited to, promoting the cause of Christ; advancing the kingdom of God; winning the unsaved; reaching the unchurched; encouraging the development of all members and others in Christian living; and engaging in

---

[3] Md. Code Ann., Corps. & Ass'ns § 5-304. Articles of incorporation, filing and contents provides:
(a) The trustees shall file articles of incorporation for record with the Department.
(b) The articles of incorporation shall contain:
    (1) The plan of the church;
    (2) The address of the principal place of worship of the church; and
    (3) The name and address of the resident agent of the church.
[4] Md. Code Ann., Corps. & Ass'ns § 5-302 Plan of religious corporation contents, requires the adult members of the church who form a religious corporation to:
(1) Elect at least four individuals to act as trustees in the name of and on behalf of the church; and
(2) Prepare a plan of the church.
The plan of the church shall include:
    (1) The purposes for which the religious corporation is formed;
    (2) The name of the religious corporation and the church;
    (3) The time and manner for election and succession of trustees; and
    (4) The exact qualifications of individuals eligible:
        (i) To vote at elections; and
        (ii) To be elected to office.

any other activity that is in the furtherance of section 501(c)(3) tax-exempt purposes.

On November 27, 2016, Independent Baptist Church held an ordination and sending service for appellant and "planted" Shore Haven Baptist Church of Sudlersville, Maryland as an IBC mission church. On that same day, IBC members unanimously voted to install its Constitution as the constitution for Shore Haven. The Constitution made no mention of appointing or dismissing clergy but did provide that the officers of the church had the authority to conduct all of the business affairs of the church.

In late 2018, early 2019, Shore Haven trustees began discussing removal of appellant as pastor of Shore Haven, due to his conduct.[5] On March 3, 2019, the Board of Trustees convened, with all seven elected board members and appellant, a trustee by virtue of his position as pastor,[6] in attendance. Five elected board members voted to remove appellant, and two trustees and appellant voted in opposition. Following the meeting, appellant was issued a letter instructing him to remain away from Shore Haven Church and to vacate the residence on Shore Haven's property on or before April 5, 2019.[7]

---

[5] The conduct at issue included: bringing a gun into the church and leaving it unattended and accessible to children, resisting the creation of a school and summer camp under Shore Haven's umbrella, a lack of organizational skills, and attempting to organize a "bow shoot" at Shore Haven, despite being informed that Shore Haven was not insured for such activity.

[6] Md. Code Ann., Corps. & Ass'ns § 5-307(c) provides: unless the plan permits otherwise, the minister of the church or, if there is more than one minister, the senior minister shall be a trustee of the religious corporation, in addition to the trustees required by § 5-302(b)(1) of this subtitle.

[7] As of the trial date, appellant continued to reside on Shore Haven's residential property.

4

Appellee filed a Complaint for Declaratory Judgment and Ancillary Injunctive Relief on March 22, 2019. Appellant filed an Answer, a Third-Party Complaint and on April 9, 2019, a Motion for Preliminary Injunctive Relief. A hearing was held by the court on May 28, 2019, and the motion for injunctive relief was denied. Following a trial on August 1, 2019, the court issued its memorandum opinion and order and declaratory judgment on August 16, 2019, finding that the Shore Haven Board of Trustees acted within the scope of its corporate and statutory authority when it voted to end appellee's tenure as pastor. Appellant's third-party complaint was dismissed.

## STANDARD OF REVIEW

Appellate courts "apply a non-deferential standard in our consideration of whether the trial court's declaratory judgment was correct as a matter of law." *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 432 Md. 292, 311 (2013) (citing *Atkinson v. Anne Arundel C'nty*, 428 Md. 723, 741 (2012)). When a circuit court conducts a bench trial and enters a declaratory judgment:

> an appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Maryland Rule 8-131(c). The trial court's evaluation of the evidence is reviewed under a clearly erroneous standard. *Falls Rd. Cmty. Ass'n, Inc. v. Baltimore Cty.*, 437 Md. 115, 135 (2014). "[A] legal interpretation . . . is reviewed without according the circuit court any special deference." *Id.* Questions involving statutory interpretation are legal issues which

we review de novo. *Damon v. Robles*, 245 Md. App. 233, 243 (2020) (citing *Harvey v. Marshall*, 389 Md. 243, 257 (2005)).

## DISCUSSION

Under the First Amendment to the Constitution, applicable to the States by virtue of the Fourteenth Amendment, "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const. Amend. I. "The Supreme Court has held that both the Free Exercise and Establishment Clauses of the First Amendment prohibit judicial review of religious questions," *Lang v. Levi*, 198 Md. App. 154, 169 (2011) (citations omitted), lest the courts stumble into a "theological thicket." *Mt. Olive African Methodist Episcopal Church of Fruitland, Inc. v. Bd. of Incorporators of African Methodist Episcopal Church Inc.*, 348 Md. 299, 309 (1997) (quoting *Maryland & Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc.*, 249 Md. 650, 660 (1968), *vacated*, 393 U.S. 528 (1969) *reaff'd on remand*, 254 Md. 162 (1969), *appeal dismissed*, 396 U.S. 367 (1970)). Our Court has further explained, "[t]he First Amendment does not 'proscrib[e] all inquiry by a court of church disputes, but only those dealing with questions of discipline, or of faith, or ecclesiastical rule, custom, or law.'" *Nouri v. Dadgar*, 245 Md. App. 324, 345 (2020) (citing *Mt. Olive*, 348 Md. 299, 311 (1997) (quoting *Calvary Presbyterian Church of Balt. City v. Presbytery of Balt. of United Presbyterian Church in U.S.*, 39 Md. App. 405, 417 (1978)) (internal quotation marks and citations omitted).

In Maryland, courts resolve religious organizations' secular disputes involving property interests or requiring an interpretation of corporate charters or bylaws, through

6

the application of neutral principles of law. *El Bey v. Moorish Sci. Temple of Am., Inc*., 362 Md. 339, 351 (2001) (citing *Mt. Olive*, 348 Md. at 310; *American Union of Baptists, Inc. v. Trustees of the Particular Primitive Baptist Church*, 335 Md. 564, 575–76 (1994)). "In a property dispute—the context in which the 'neutral principles of law' doctrine was first developed—courts turn to 'objective, well-established concepts of trust and property law.'" *Nouri v. Dadgar*, 245 Md. App. 324, 346 (2020) (applying neutral principles of contract law to resolve a dispute regarding the enforceability of a religious marriage contract containing a *mahr*, a provision requiring one spouse to make a payment to another) (citing *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 370 Md. 152, 179 (2002) (quoting *Jones v. Wolf*, 443 U.S. 595, 603 (1979))). The Court of Appeals has explicitly stated that "Maryland's Religious Corporation Law [is] a 'neutral principle of law.'" *Am. Union of Baptists, Inc. v. Trustees of Particular Primitive Baptist Church at Black Rock, Inc.*, 335 Md. 564, 575–76 (1994) (citations omitted).

Appellant argues the Shore Haven trustees had no authority to remove him as pastor. He contends the trustees' authority is limited by Section 5-306 of the Md. Code Ann., Corps. & Ass'ns, because the statute contains no language expressly authorizing the trustees to "control any operation of the church," aside from the church's assets. Appellant also argues the decision to remove him involved "ecclesiastical matters," and, thus, should have been left to the Shore Haven congregation. Conversely, appellee argues the statute's language is not exhaustive and that the trustees acted within the scope of their corporate authority.

7

In its opinion, the circuit court first concluded that "the question of who possesses the authority under the relevant governing documents to authorize the removal [of a pastor], and the validity of those documents, is a non-ecclesiastical matter that the Court can resolve without trespass to the First Amendment." The court then determined the trustees acted properly and that it "could not conclude that the roles of the trustee[s] are limited only to the powers laid out in [Md. Code Ann., Corps. & Ass'ns] § 5-306."

Churches in Maryland formally organize as religious corporations and thus, the trustees, not the congregation, constitute the corporation. *See Phillips v. Insley*, 113 Md. 341 (1910) (citing *Stubbs v. Vestry of St. John's Church*, 96 Md. 267 (1903) (citations omitted). "[T]he purpose of [religious] incorporations . . . [is] to enable the church to attend more readily and efficiently to their temporal affairs, without any power or authority to interfere with forms of worship, articles of faith, or any other matter, relating strictly to spiritual concerns." *Jenkins v. New Shiloh Baptist Church of Baltimore, Md.*, 189 Md. 512, 520 (1948) (citing *Tartar v. Gibbs*, 24 Md. 323, 334 (1865)*; Stubbs*, 96 Md. 267). The Maryland Religious Corporations Law is part of the Maryland Corporations and Associations Article. *See* Md. Code Ann., Corps. & Ass'ns § 1-102(a) ("Except as otherwise expressly provided by statute, the provisions of this article apply to every Maryland corporation and to all their corporate acts."). The plain language of Md. Code Ann., Corps. & Ass'ns § 2-103(18) states: "[u]nless otherwise provided by law or its charter, a Maryland corporation has the general powers, whether or not they are set forth in its charter," to perform "every other act not inconsistent with law which is appropriate to promote and attain the purposes set forth in its charter." Thus, a corporation's board of

8

directors,[8] and likewise, a religious corporation's board, has the power to manage "[a]ll business and affairs of a corporation, whether or not in the ordinary course."

In the present case, we hold the powers of a religious corporation are not limited to those specifically delineated in the Maryland Religious Corporations Article. Instead, the statute must be read as part of the Maryland Corporations and Associations Article, which confers "general powers" upon corporations, including religious corporations, to perform acts that are consistent with their charters. *See* Md. Code Ann., Corps. & Ass'ns § 2-103(18). "The plain language [of a statutory provision] should not be interpreted in isolation, but '[r]ather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.'" *Stachowski v. Sysco Food Servs. of Baltimore, Inc.*, 402 Md. 506, 516 (quoting *Clipper Windpower, Inc. v. Sprenger*, 399 Md. 539, 554 (2007)) (citations omitted) (alterations not in original).

We find also instructive on the issue of the trustees' authority, the Court of Appeals' decision in *Stubbs v. Vestry of St. John's Church*, which was relied upon by the trial court. There, a church's vestry[9] removed the rector[10] from his office without any action by, or notice to, the congregation. *Stubbs v. Vestry of St. John's Church*, 96 Md. 267 (1903). The rector was paid an annual salary, permitted to live in the church's residence rent free, and

---

[8] Md. Code Ann., Corps. & Ass'ns § 1-101(l) defines "director" as "a member of the governing body of a corporation, whether designated as a director, trustee, or manager or by any other title."

[9] "Vestry" is a term for "the governing body of a church."

[10] "Rector" is a term for "minister" or "pastor."

9

was a member of the corporation. *Id.* After his removal from office, the rector filed for an injunction, citing two claims: (1) according to the laws of the state, only the congregation had authority to remove him from office; and (2) even if the vestrymen had the power to remove him, their action was inequitable because his salary was in arrears and he did not receive reasonable notice of his termination. *Id.*

At the outset, the Court of Appeals found that the "controversy [did] not involve any ecclesiastical question or any question of ecclesiastical law; but it concern[ed] the construction of an act of assembly and the charter or constitution of St. John's Church, and [had] relation to nothing more than a discussion of the ordinary powers of a private corporation." *Id.* The deed of incorporation expressly provided that the corporation had the power to appoint the rector but was silent as to who had the power to remove. *Id.* The Court then acknowledged that the vestry is the "body corporate" and not the congregation, and the congregation's power is "to elect . . . persons . . . [to constitute] a body politic or corporate upon being registered." *Id.* (internal quotation marks and citations omitted). The Court noted that if the power to remove the rector "resides in the congregation, it must so reside by reason of there being an express delegation of it to the congregation." *Id.* Finding no such authority in the church's governing documents, the Court determined that the right to remove the rector was not conferred upon the congregation but rather to the "body corporate,—that is, to the vestry" and that "inherent in the power to appoint is the power to remove." *Id.* at 917.

The present case is analogous to *Stubbs* and we hold the teachings of *Stubbs* apply. Here, while the church's incorporation documents did not expressly provide for the

10

appointment or removal of a pastor, the trustees were clearly the "body corporate" and there were no documents conferring any authority to the congregation. The trial court made a factual finding that Vaughn was the *de facto* Pastor of Shore Haven through acquiescence of the Shore Haven trustees. This finding was based on the evidence presented at trial and was not erroneous. The court also found that Shore Haven never adopted a new or different constitution, and therefore, "the authority to terminate [appellant] was vested in the governing body, i.e., the trustees of Shore Haven." This finding was also supported by the evidence. As such, the trustees properly acted in accordance with their corporate authority.

Appellant also argues that Shore Haven trustees lacked authority to terminate him because the firing of a church pastor is an ecclesiastical matter reserved to the church, not the trustees. He cites *Downs v. Roman Catholic Archbishop of Baltimore*, asserting that "[t]he relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." 111 Md. App. 616, 624–25 (1996) (quoting *McClure v. Salvation Army*, 460 F.2d 553, 558–59 (5th Cir.), *cert. denied*, 409 U.S. 896 (1972).

Conversely, appellee argues the action taken by the Shore Haven trustees was a "personnel decision" and was within the "ordinary powers of a private corporation." Appellee cites *Jenkins v. New Shiloh Baptist Church of Baltimore, Md.*, where the Court of Appeals held that "[q]uestions concerning the removal of a rector involve contractual and property rights and are not concerned alone with doctrine, discipline or worship." 189

11

Md. 512, 521 (1948) (internal quotation marks and citations omitted). The *Jenkins* Court

stated:

> There is no question here of faith, spiritual discipline, or mere rule of ecclesiastical government, apart from relations created by contract and the property rights of the parish. The principal matter of this suit depends upon the contractual relations existing between the vestry and the rector, construed with reference to statutory provisions of the state; and such being the case, it is quite true, as said by the [Supreme Court] of the United States in [*Watson v. Jones*, 80 U.S. 679, 714, 20 L. Ed. 666 (1871)], that religious organizations come before the courts of the country in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract are equally under the protection of the law, and the actions of their members subject to its restraints.

*Jenkins v. New Shiloh Baptist Church of Baltimore, Md.*, 189 Md. 512, 521 (1948) (quoting

*Bartlett v. Hipkins*, 76 Md. 5 (1892)).

To be sure, ecclesiastical matters are within the province of the church and not civil

courts. *See Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426

U.S. 696, 713–14 (1976) (stating that "a subject-matter of dispute, *strictly and purely*

*ecclesiastical in its character* [is] a matter over which the civil courts exercise no

jurisdiction") (emphasis added); *Bourne v. Ctr. on Children, Inc.*, 154 Md. App. 42, 54 n.9

(2003) (mandating "that churches retain exclusive control over strictly ecclesiastical

matters") (citations omitted). However, here, there was simply no evidence that the

Board's decision was based on disputes regarding religious doctrine, biblical

interpretations or other ecclesiastical matters. As stated by appellee, "appellant's personal

behaviors, organizational shortcomings, inability to manage a breakdown in civility, and

over-heated remarks about [a Shore Haven trustee] drove" the decision.

In sum, the Shore Haven Board of Trustees, in accordance with its Articles of Incorporation and applicable statutes, had the authority to terminate appellant as pastor. Contrary to appellant's assertions, the trustees' actions were within the scope of their corporate authority.

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**