# LEVI B. PHILLIPS *vs.* T. SANGSTON INSLEY, TRUSTEE.

*Religious Corporations—Diversion of Land Granted for a Chapel to Other Uses—Reverter—Adverse Possession—Marketable Title—Deed of Religious Corporation Signed by Its Trustees—Seal of Corporation.*

If land, which was granted to a religious corporation to be used for a designated purpose, is used by the corporation for a different purpose, the title reverts to the grantor or his heirs, but the Statute of Limitations begins to run against them from the time the land began to be used in contravention of the grant, and the possession by the corporation of the land so used for the statutory period creates a new title by adverse possession.

A corporation may adopt any seal, and when a church corporation makes a conveyance of its land, seals being attached to the signatures of each trustee, these will be treated as constituting the corporate seal.

In 1800, M. conveyed certain land to trustees to be used as a chapel for a designated religious society. In 1812, the trus-

tees conveyed the property to the society, which had become incorporated, to be held for the uses mentioned in the deed of M., and for no other. In 1845, the corporation erected another church building elsewhere, and thereafter used the land so granted as a burial place. In 1890, it was sold under a decree to B. After his death the purchaser of the land from his estate objected to the title upon the ground that, since the land had been diverted from the uses expressed in the original deed, the title had become reinvested in the heirs of the grantor. *Held,* that the use of the land, beginning in 1845, for purposes other than those set forth in the deed constituted an adverse possession; that the Statute of Limitations then began to run against the heirs of the grantor; that the adverse possession had ripened into a marketable title when the land was conveyed to B., and that consequently the purchaser in this case should be required to accept such title.

The trustees of a certain church, which was a corporation by that name, executed a conveyance of land owned by it which was signed by each trustee, individually, the word "seal," with a scroll around it, being appended to each signature. The deed purported to be made by the corporation, and the trustees intended to act in their corporate capacity, and it does not appear that the corporation had a seal. *Held,* that the deed is a valid conveyance by the corporation.

*Decided June 23rd, 1910.*

Appeal from the Circuit Court for Dorchester County (JONES, J.).

The cause was submitted to the Court on briefs by:

*Emerson C. Harrington,* for appellant.

*T. Sangston Insley,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court for Dorchester County finally ratifying a trustee's

sale to the appellant of a lot of ground in the town of Cam-
bridge.

The sale was made, under the Court's decree, for pur-
poses of partition of the real estate of which the late William
H. Barton died seised. The regularity of the sale and of the
proceedings under which it was made are conceded. Its
ratification was excepted to solely upon the ground that Mr.
Barton did not have a marketable title to the tract of land
out of which lot sold to the appellant came.

There is no controversy over the facts of the case, which
appear on the record in a written agreement supplemented
by copies of conveyances and judicial proceedings. The fol-
lowing facts selected from those sources will disclose the
issue presented by the appeal.

On August 6th, 1800, Robert Muir, by deed of that
date, conveyed, for the consideration of $145.33, a lot of
land in Cambridge, containing three-fifths of an acre, to
seven named individuals and their successors in special trust
and confidence, "for the use and express purpose of erecting
and keeping a preaching house or chapel thereon for the only
proper use and benefit of the Methodist Episcopal Church,
and to be occupied and made use of as a preaching house or
chapel by the ministers of the said society or church now
licensed or authorized or which at any time hereafter shall
be licensed or authorized to preach the gospel by the General
Conference of the preachers of said church or by the Bishops
or Presiding Elders of the same for the time being and to be
made use of also in like manner by all other preachers or
exhorters of said church who shall be licensed or authorized
to preach or exhort agreeable to the rules of said church and
none others." The grantees were described in the deed as
the trustees for the time being of the church and provision
was made in the deed for filling vacancies which might from
time to time occur in their number.

The congregation for whose benefit the deed was made
took possession of the lot and erected a church edifice on it,

and on March 7th, 1806, became duly incorporated under the general laws of the State by the name of "The Trustees of Zion Chapel in Cambridge." On April 8th, 1812, the trustees, to whom Muir had originally conveyed the lot for the benefit of the congregation, made a deed of it to the incorporated body "to and for the uses and trusts reposed in the said trustees and to and for none other whatever."

The congregation continued uninterruptely to use the lot and the building thereon as its place of worship down to the year 1845 when, having acquired another lot in what was regarded as a more suitable portion of the town, it erected a church edifice thereon which it has, ever since then, used and occupied for its church purposes. Upon the erection of the new church building, in 1845, the old one on the lot purchased from Muir was torn down and removed from the lot which was thereafter abandoned as a place for preaching or worship, and was used, only as a burial place, by the congregation down to the year 1890.

On March 28th, 1890, "The Trustees of Zion Chapel in Cambridge" filed its bill in the Circuit Court for Dorchester County alleging the facts, of which we have stated the substance, and also that since 1845 it had been in continuous, exclusive and adverse possession of the lot and had used it for burial purposes, but that it was no longer eligible for that purpose and was entirely unproductive and a source of constant expense to the congregation, and that its sale and the reinvestment of the proceeds of sale would be advantageous, etc., etc. The bill further averred that Robert Muir had been dead for very many years and that it was unknown whether he left any heirs, or, if he left any, who they were or whether they resided within the State or beyond its limits, and prayed for an order of publication against them for the better assurance of the title of a purchaser of the land, and for a decree for a sale of the land and a reinvestment of the proceeds.

After due notice by publication to the unknown heirs of Muir and a failure of any one to appear in response thereto a decree *pro confesso* was passed in the case, and in due course, after proper testimony establishing the allegations of the bill had been taken, a final decree was passed directing the sale of the lot and appointing David Straughn trustee to make the sale. At the sale, which was made in 1890, William H. Barton, then known as William H. Barton, Jr., became the purchaser of the lot, and, after the final ratification of the sale, and the payment by him of the purchase money the lot was duly conveyed to him, by a joint deed from David Straughn trustee and the church corporation, "The Trustees of Zion Chapel in Cambridge." He continued to own and hold it until his death and it formed part of the real estate sold thereafter in the partition suit already mentioned. The appellant Levi B. Phillips purchased a portion of the lot at the partition sale and excepted to the ratification of the sale to him because, under the facts stated, Barton's title to the lot was alleged not to be marketable.

The Court after a hearing upon the exceptions overruled them and finally ratified the sale by the order from which the appeal was taken.

The learned Judge below was clearly right in treating the title acquired by Mr. Barton from the Trustees of Zion Chapel in Cambridge as a marketable one.

The circumstances of the acquisition and holding by the congregation of the lot of land involved in the present case and the one which formed the subject of controversy in *Reed v. Stouffer,* 56 Md. 236, are identical in principle and in most respects alike in fact. In the former case the lot was conveyed by Howard to certain trustees, for the use of the then unincorporated congregation of German Baptists as a burial ground, in 1808. The congregation having become incorporated under the General Laws of the State filed a bill in equity against the heirs at law of the trustees, who had died, asking that they be required to convey to it the legal

title to the lot.    While that suit was still pending, the heirs
at law of the trustees filed a bill in the same Court alleging
that the lot was no longer suitable for use as a burial ground
and that it would be for the advantage of all parties inter-
ested that it be sold and the proceeds divided among them.

The two cases having been consolidated the Court held
that the congregation was entitled to a conveyance of the
lot from the trustees upon the uses declared in the deed of
1808 from Howard, but that neither the heirs of the trus-
tees nor the congregation were entitled to divert the lot from
those uses and that upon any such diversion the terms of the
deed would be violated and the heirs of the grantor would
immediately become re-invested with the title to the lot.

In *Gump* v. *Sibley,* 79 Md. 165, it was held that although
a deed to a church, of a lot to be used as a burial ground, was
void for not expressing on its face the purpose for which the
lot had been bought, the entry of the grantee into possession
thereunder constituted an adverse possession which if con-
tinued for twenty years would perfect the title against all
persons not under legal disabilities, and that if the period of
limitations began to run against the grantor in his lifetime it
would not be suspended by his death nor by the superven-
tion of infancy, coverture or other disability.

In *Zion Church* v. *Hilken,* 84 Md. 170, we held that al-
though a conveyance to trustees for the use of a religious
society was void, for want of the assent of the Legislature
required by the Declaration of Rights, the entry into posses-
sion by the grantees under the deed caused the statute of
limitations to begin to run against the grantor; and that the
continuance of the possession by the grantees and those claim-
ing under them for twenty years perfected their title against
all persons not under disabilities.    In *Rother* v. *Sharp St.
Station,* 85 Md. 528, where the religious society had entered
upon a lot conveyed to it for specified uses and then for
much more than twenty years had openly and notoriously
applied it to other uses the title of the society to the lot was

held to be marketable and a purchaser was required to accept it in a suit for the specific performance of his contract of purchase.

The same conclusion, as to the effect of the entry by a religious society upon land, conveyed to it by a deed void for want of legislative assent, and the retention of possession of it for more than twenty years in giving a marketable title to the society, was reached by us in the more recent cases of *The Regents, etc.,* v. *Trustee of M. E. Calvary Church,* 104 Md. 635, and *Dickerson* v. *Kirk,* 105 Md. 639. In the last mentioned case, where the possession had continued, as it has in the case at bar, for more than forty-three years we said that there could be no doubt that the society had a good and merchantable title by adverse possession which a purchaser was bound to accept.

In the light of these precedents we have no hesitancy in holding that the Statute of Limitations began to run against the heirs of Muir when the Trustees of Zion Chapel, in Cambridge, in 1845, openly diverted the lot of ground, whose title is now called in question, from the uses of a chapel or preaching house, and that the adverse possession of the lot, then begun, ripened into a marketable title by the continued and uninterrupted possession and application of it to the use of a burial ground by the society down to the year 1891 when it was sold and conveyed to Mr. Barton.

It is urgently contended on the appellant's brief that the Circuit Court of Dorchester County had no jurisdiction to sell the lot under the bill filed by the church corporation on March 28th, 1890, and that therefore the sale to Mr. Barton under the decree in that case conferred no title on him. We deem it unnecessary to enter into a consideration of the precise nature and scope of that equity proceeding because if the Court had jurisdiction therein to decree the sale Mr. Barton took title to the property under the deed from Mr. Straughn as trustee and the joinder of the church corporation in the deed, was mere surplusage. If on the other hand

the Court had no jurisdiction the title passed to him under the deed from the corporation.

The deed upon its face professes to be the deed not only of Straughn as trustee but also of the Trustees of Zion Chapel in Cambridge, who are named therein, *acting in their corporate capacity as "an ecclesiastical corporation created under the laws of Maryland."* It is signed by Straughn as "trustee in equity" and by each one of the church trustees who in their signatures as well as in the body of the conveyance are described as the "Trustees of Zion Chapel, in Cambridge, Md.," and the signatures are duly attested by the magistrate before whom it was acknowledged by all the grantors in the respective capacities in which they are described in the deed.

The word "(seal)" appears on the record affixed to each signature. It of course does not appear whether on the original deed the seals were wax impressions or mere scrolls, but assuming them to have been scrolls we think the deed was a valid corporate conveyance. In *Mill Dam Foundry* v. *Hovey,* 21 Pick. 417, where the signature of each of the corporation officials to a deed had affixed to it a piece of blank paper attached by a wafer, without any impression on any of them indicative of a corporate seal, the instrument was held to be the deed of the corporation the Court saying in its opinion "a corporation as well as an individual may adopt any seal. They need not say that it is their common seal. This law is as old as the hills." See to like effect *St. Phillips Church* v. *Lion's Church,* 23 S. C. 297; *Taylor* v. *Haggie,* 83 N. C. 244; *Ransom* v. *Stonington Savings Bank,* 13 N. J. Eq. 212. *Ill. Cent. R. R. Co.* v. *Johnson,* 40 Ill. 35; *Wiley* v *Board of Education,* 11 Minn. 370; 7 *A. & E. Encyl.* 692; 10 *Cyc.* 1011-12.

The case of *Reynolds* v. *Glasgow Academy,* 6 Dana, 37, bears a striking resemblance to the one now under consideration. There the appellee was a corporation under the name of "The Trustees of Glasgow Academy." A deed signed by

all of the trustees constituting the corporation with a separate scroll appended to each signature was held to be a good corporate conveyance, it appearing upon the face of the deed, as it does upon the face of the one now before us, that the trustees in making it intended to act in their corporate, and not in their individual capacity and it not appearing that they had a corporate seal.

Under the Maryland system of incorporating religious societies the trustees and not the congregation constitute the corporation. *Bethel Church* v. *Carmack*, 2 Md. Chy. 143; *Stubbs* v. *Vestry of St John's*, 96 Md. 275. Although the general incorporation law of the State authorizes trustees, who have become incorporated on behalf of religious societies or congregations, to adopt a corporate seal, neither that law nor the charter of the trustees now under consideration, a copy of which appears in the record, require them to adopt one, nor does it appear that they have ever formally done so. Under such circumstances and in view of the very formal and technical function of a seal, we think that the execution, in the manner mentioned, of the deed of September 8th, 1891, to Mr. Barton by the trustees who declared on the face of the instrument their intention to act in their corporate capacity must be held to have constituted a sufficient adoption of the scroll used by them as a corporate seal *pro hac vice* to make the deed a valid and effectual corporate conveyance of the lot of ground therein described.

Having already held the title of the Trustees to have been a marketable one we must affirm the order appealed from.

*Order affirmed with costs.*