# MEYER SELOFF AND BESSIE SELOFF, HIS WIFE,

## vs.

## MORRIS NAIDETSCH.

*Vendor and Purchaser—Title Based on Limitations—Right of Reverter.*

That the property sold was diverted from the use to which it was restricted by an early conveyance in the vendors' chain of title, *held* not to affect the vendors' right to enforce the contract of sale, any right of reverter in favor of the heirs of the grantor in such conveyance being barred by adverse possession for the statutory period after the date of such diversion.          p. 657

It being agreed by counsel for the vendors and purchaser that the former are to be treated as though they "held the property exclusively, openly and notoriously" from the year 1855 till 1920, and there being no evidence of the existence of heirs of the former grantor who are, by reason of disability, not barred by limitations, the merchantable quality of the vendors' title cannot be questioned on the assumption that there may possibly be such heirs.          pp. 655, 657

*Decided June 17th, 1920.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Louis S. Ashman,* for the appellants.

*Philip L. Sykes,* with whom was *Emanuel M. Baum* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the 24th of April, 1917, the appellants and the appellee entered into a contract of sale by which the appellee agreed to purchase from the appellants the property known as No. 1261 East Fayette Street, in Baltimore City, Maryland, subject to an annual ground rent of $42.50, for the sum of $2,100, $50 of which was to be paid before the signing of the contract, and the balance within thirty days from the date thereof upon the execution of a deed conveying to the appellee "a good and merchantable title" to the property satisfactory to the appellee's attorney. The appellee having refused to accept a deed and to pay for the property, the appellants filed a bill of complaint in the Circuit Court of Baltimore City for specific performance of the contract. The appellee answered the bill, admitting the execution of the contract, but alleging that the appellants did not have and could not convey to him a good and merchantable title to the property and one satisfactory to his attorney. Testimony was taken before the court, and this appeal is from the decree of the court below dismissing the bill.

The record contains an agreement that the record in the Court of Appeals shall contain the following:·

"1. The bill of complaint, exhibits referred to in said bill of complaint, answer, replication, petition to take testimony in open court and decree of court.

"2. It is agreed that the plaintiff is entitled to the specific performance of the agreement of sale for the property in question, if the court shall find that the plaintiff has a good and merchantable title to said property.

"3. It is further agreed that the property in question, No. 1261 E. Fayette Street, in the City of Baltimore, forms a part of the land bound by the south side of Fayette Street, the west side of Central Avenue, the north side of Baltimore Street, and the east side of Aisquith Street, and the said square is entirely built up by valuable property and improvements, including the one in question, with the exception of a portion

thereof, which is still being used by the Quakers as a burial ground and meeting house, and is walled off from the balance of the said square.

"4. It is further agreed that the said property included in the said square was by deed dated the 19th day of June, 1773, and recorded among the Land Records of Baltimore City in Liber A. L. No. G, folio 336, etc., was conveyed by Andrew Stigar to John Cornthwaite and Gerard Hopkins, in trust, 'for and to the use of the purposes following, to say for the use of the Society of Christian People, called Quakers, inhabited and dwelling in and near the town and county of Baltimore, in the Province aforesaid, to enclose and keep the same for a burying place, to bury or inter those of the Society that may from time to time depart this transitory life, and also to erect or build a meeting house for the same Society of People, for the public worship of Almighty God, or such other improvements as they, the said Society, may think proper.'

"5. It is further agreed that the property in question, No. 1261 East Fayette Street, was leased by the said trustees or their successors in the year 1855 to persons from and under whom the plaintiffs obtained and are holding title, and it is further agreed that the ownership of the plaintiffs is to be treated as though they obtained title to the said property as shown in their bill of complaint, directly from the said trustees or their successors, and held the property exclusively, openly and notoriously from the year 1855 to the present date.

"6. On behalf of the defendant the following testimony was offered:

"George P. McCeney, a witness of lawful age, produced on behalf of the defendant, having been duly sworn, testified as follows:

"*Direct Examination.*

"Q. (By Mr. Baum): You are a practicing attorney-at-law? A. Yes. Q. What is your full name? A. George P. McCeney. Q. Where is your office? A. 422

Law Building, Baltimore, Maryland. Q. You are a member of the firm of McCeney & Bickel? A. Yes. Q. You are familiar with that lot of ground in Baltimore City bounded by the respective streets known as Aisquith Street, Central Avenue, Baltimore Street and Fayette Street, and with the previous ownership thereof, are you not? A. I am. Q. (Mr. Baum): I have a letter before me dated May 25th, 1917. Is that your signature thereto? A. That is the signature of my partner, Mr. Bickel. I recognize the signature.

"(Mr. Ashman): We object to the admission of this letter.

"(The Court): I will overrule the objection.

"(Exception noted.)

Letter is as follows:

"'Baltimore, Maryland, May 25th, 1917.

"'Messrs. Baum & Sykes,

"'509-10 Law Bldg., City.

"'Gentlemen:

"'We beg to inform you that we represent several of the heirs of Andrew Stigar, and since your Mr. Baum, not cognizant of that fact at the time when he discussed the proposition of law involved in the title that he stated he was searching, told us of the circumstances surrounding the case, we feel we are duty bound to tell you that the heirs of Andrew Stigar are very active in all matters concerning the transfer of properties embraced in the deed in trust from their ancestor to the Quakers.

"'Accordingly, we advise you to exercise your judgment in this matter, since litigation is threatened and your client may be put to a great deal of expense and ultimately lose his title to said property.

"'Yours truly,

"'(Signed)   McCeney & Bickel.'

"(Paper marked Defendant's Exhibit No. 1.)

"Q. (By Mr. Baum): You represent the heirs of Andrew Stigar? A. We represent all but about four. They are represented by Mr. Ogle Marbury and another attorney in town."

As the agreement states that the property in question is a part of the property conveyed by Andrew Stigar by deed dated June 19th, 1773, to John Cornthwaite and Gerard Hopkins in trust "for the use of the Society of Christian People, called Quakers" * * * "to enclose and keep the same for a burying place, * * * and also to erect or build a meeting house for the same Society of People, for public worship of Almighty God, or such other improvements as they, the said Society, may think proper," and that the same was leased by the said trustees, or their successors, in 1855 to the persons from and under whom the appellants obtained and are holding title, and as it is agreed that the title of the appellants is to be treated as though they obtained title to the property directly from the trustees or their successors, and have held the property exclusively, openly and notoriously from the year 1855 to the present date, we see no valid objection to their title. The contention of the appellee is that the conveyance in 1855 by the trustees, or their successors, to the appellants' predecessors in title was a diversion of the property from the uses to which it was conveyed, and that it thereupon reverted to the heirs of the original grantor under the decisions in *Second Universalist Society* v. *Dugan,* 65 Md. 460, and *Kelso* v. *Stigar,* 75 Md. 376. That being the effect of those decisions, limitations began to run against the heirs of the original grantor in 1855, and as the agreement states that in passing upon the title the appellants are to be treated as having held the property in question exclusively, openly and notoriously ever since 1855, they must be held, under the decisions in *Dickerson* v. *Kirk,* 105 Md. 638, and *Phillips* v. *Insley,* 113 Md. 341, to have a good and merchantable title thereto. In *Dickerson* v. *Kirk, supra,* the appeal was from a decree requiring the purchaser (the appellant) to pay the balance of the purchase money for a property purchased by him from the trustees of the Franklin Street Presbyterian Church. The property had been conveyed to the church by the Methodist Sunday School

Society of North Baltimore Station by deed dated June 1st, 1863, and had been conveyed to that society by Abraham Silver and Charles Farringer by deed dated the 24th day of May, 1841. It was conceded in the case that neither of those grantees obtained the sanction of the Legislature for those conveyances in accordance with the requirements of Article 38 of the Declaration of Rights; but, after referring to that defect in the title of the church and society under the deeds referred to, JUDGE BOYD, speaking for the Court, said: "But the evidence conclusively shows that since June 1st, 1863, the date of its deed, the trustees of the Franklin Street Presbyterian Church, which is a body corporate, has been in continuous, notorious, adverse and uninterrupted possession of the property, paying regularly the ground rent reserved thereupon and using the building as a Sunday school room until about three years ago, since which time it has paid taxes on it and rented the property out.

"Under the recent decision of this Court in *Regents of University of Maryland* v. *Trustees of Calvary M. E. Church, South,* 104 Md. 635, where previous cases were cited and considered, there can be no doubt that the appellee has a good and merchantable title by adversary possession. It has been in possession of the property for over forty-three years, and there is nothing in the record to suggest anything that could in any way affect its title. Without deeming it necessary to repeat what has been said so recently concerning a similar title involved in the case last cited, we would unhesitatingly affirm the decree of the lower court but for an error in it to which our attention has been called," etc. In the case of *Phillips* v. *Insley, supra,* which arose on an objection to a ratification of sale, JUDGE SCHMUCKER, after referring to numerous decisions in this State, said: "In the light of these precedents, we have no hesitancy in holding that the Statute of Limitations began to run against the heirs of Muir when the Trustees of Zion Chapel in Cambridge in 1845 openly diverted the lot of ground whose title is now

called in question from the uses of a chapel or preaching house, and that the adverse possession of the lot, then begun, ripened into a marketable title by the continued and uninterrupted possession and application of it to the use of a burial ground by the society down to the year 1891, when it was sold and conveyed to Mr. Barton."

The appellee relies upon the case of *Second Universalist Society* v. *Dugan, supra,* where the Court said: "Notwithstanding the long possession of the appellant, without molestation, it does not appear by the admissions in the case to have been such a possession as could be relied on against possible heirs of those grantors; for infancy, coverture and other disabilities *may have* existed to protect them." In the case at bar, however, the agreement states that the appellants must be treated as having held the property exclusively, openly and notoriously ever since 1855 to the "present date," February 26th, 1920, and, as said by JUDGE BOYD in *Dickerson v. Kirk, supra,* there is nothing in the record to show any defect in their title. There is nothing in the letter of McCeney & Bickel to counsel for the appellee to warrant the rejection of the appellants' title. If such a letter could be relied on to defeat a contract of sale, every title by adversary possession could be rendered unmarketable. In the absence of some evidence to show that there are heirs of the original grantor against whom the Statute of Limitations has not become an absolute bar, we must hold that the appellants have "a good and merchantable title" to the property in question, and we must, therefore, under the agreement contained in the record, reverse the decree of the court below and remand the case in order that a decree may be passed in accordance with this opinion.

> *Decree reversed, with costs, and cause remanded in order that a decree may be passed in accordance with this opinion.*