THE PRESBYTERY OF BALTIMORE OF THE UNITED
PRESBYTERIAN CHURCH IN THE UNITED STATES
OF AMERICA v. BABCOCK MEMORIAL
PRESBYTERIAN CHURCH ET AL.

[No. 1576, September Term, 1981.]

\* \* \*

THE PRESBYTERY OF BALTIMORE OF THE UNITED
PRESBYTERIAN CHURCH IN THE UNITED STATES
OF AMERICA ET AL. v. MERRITT
BOULEVARD PRESBYTERIAN
CHURCH OF DUNDALK, INC.

[No. 1577, September Term, 1981.]

*Decided September 8, 1982.*

The cause was argued before THOMPSON, MOYLAN and MACDANIEL, JJ.

*Dorothy M. Beaman* and *Richard W. Kiefer* for appellants.

*W. J. Williamson,* with whom was *David S. Pearl* on the brief, for appellee Merritt Boulevard Presbyterian Church. *Mark E. Werner, II* on the brief, for appellee Babcock Memorial Presbyterian Church.

THOMPSON, J., delivered the opinion of the Court.

This is a consolidated action emanating from a conveyance by the Session and Board of Trustees of the Babcock Memorial Presbyterian Church (Babcock) of all of its real and personal property as "absolute and irrevocable gifts" to Merritt Boulevard Presbyterian Church of Dundalk, Inc.

(Merritt). At the time of the conveyance, Babcock was a member of the Presbytery of Baltimore of the United Presbyterian Church in the United States of America (Presbytery) and the United Presbyterian Church in the United States of America (United). The trial court held that at the date of the conveyance Babcock was legally entitled to make "absolute and irrevocable" gifts of its real and personal property to Merritt, that Presbytery has no contractural or proprietary interest in the property, and that the departing members could continue to use the name and control the corporate organization.

Appellants present the following questions:

1. Did the lower court err in holding that United, while being a hierarchical church in ecclesiastical matters, has a congregational polity with respect to church property?

2. Is Babcock bound by United's Constitution?

3. Did the lower court err in holding that Babcock's original Session and Board of Trustees, by conveying all of Babcock's real and personal property to Merritt as absolute and irrevocable gifts, defeated appellant's right to have the use, possession and control of that property?

United is organized and operated under a constitution which consists of two parts: "The Book of Confession" and "The Book of Order." The Book of Order contains three parts, namely: the "Directory of Worship," the "Form of Government," and the "Book of Church Discipline." That part of the constitution at issue is the "Form of Government." United is an association of local United Presbyterian churches organized into a hierarchical structure consisting of four distinct bodies known as judicatories (tribunals of ecclesiastical authority). These tribunals in ascending order of authority, according to the powers given or reserved to them by The Book of Order, are: (1) the Session, which has authority over all the affairs and activities of the particular church, (2) the Presbytery, composed of all of the United Presbyterian Churches in a geographic area, (3) the Synod, generally

composed of the Presbyteries in a given state or region, and (4) the General Assembly, the highest governing body within United.

The Presbytery of Baltimore is a non-profit, unincorporated association, its principal office being in the City of Baltimore. Its jurisdiction entails the supervision and care of those United Presbyterian Churches located in the City of Baltimore, central and western Maryland.

Babcock, originally named The Park Presbyterian Church of Baltimore City, was incorporated under the laws of Maryland in 1891. Article VI of the original charter provides:

"The Park Presbyterian Church of Baltimore City shall forever remain a Presbyterian Church in accordance with the Standards of the Presbyterian Church of the United States." [1]

Two years later it was enrolled as a member of the Presbytery and has remained a member of and under the care of the Presbytery through March 23, 1981, when its status came into dispute. In 1949 Babcock moved from its original location at North and Madison Avenues in Baltimore City to its present location on Loch Raven Boulevard with the aid of Presbytery and consent of Babcock's congregation. The majority of funds used to acquire Babcock's property, real and personal, was secured as the result of the efforts and donations of the local congregation.[2]

Certain disputes, ecclesiastical in nature, arose between Babcock and the higher judicatories of United, and at an August 5, 1980 meeting, the Session voted to recommend to the congregation that appropriate actions be taken to sever

---

1. On May 28, 1958 the Presbyterian Church in the United States of America and the United Presbyterian Church of North America merged to form the church now known as the United Presbyterian Church in the United States of America (United).

2. The only funds emanating from a source other than the local congregation was a loan of $5,000 in 1951 by the Board of National Missions, secured by a mortgage on the property, which was released, having been fully paid, in 1966.

Babcock's relationship with Presbytery and United. On September 18, 1980, the Presbytery, at its regular monthly meeting, established an Administrative Commission to investigate the alleged disorders at Babcock and to recommend to the Presbytery whether Babcock's Session should be dissolved and replaced with the Administrative Commission as provided in The Book of Order.[3] Meetings were held between the Commission and leadership and congregation of Babcock without resolution of the problem. The Session, on March 14, 1981, made an "absolute and irrevocable gift" of the subject property to Merritt.[4] On March 16, 1981, after the deed of the real property had been recorded in the Land Records of Baltimore County, a letter advising of the gift transfers was hand delivered to Presbytery. On March 23, 1981, at a meeting called by the Session and Board of Trustees of Babcock, the membership voted by a majority of those present (228-6) to withdraw from United and its constituent judicatories. The membership further ratified and adopted as their action, the acts of the Session and the Board of Trustees in conveying the property as gifts to Merritt.

In late March 1981, the Administrative Commission assumed possession of the Babcock property and required Babcock congregants to leave the premises. On several occasions thereafter, members of Merritt attempted to gain access to the church for purposes of a congregational meeting, but were denied by the appellants. Merritt thereafter filed suit in ejectment and trespass to regain possession of the property and the Presbytery and members of

---

**3.** Section 41.15 of The Book of Order provides:

"15. Whenever, after a thorough investigation, and after full opportunity to be heard has been accorded to the session in question, the presbytery of jurisdiction shall determine that the session of a particular church is unable or unwilling to manage wisely the affairs of its church, the presbytery may appoint a commission composed of ministers and ruling elders, with the full power of a session. This commission shall take the place of the existing session, if any, which shall cease to act until such time as the presbytery shall otherwise direct."

**4.** Merritt Boulevard Presbyterian Church of Dundalk, Inc., was incorporated on April 15, 1980 as an unaffiliated Presbyterian Church. It has fourteen members and its principal place of worship is in Dundalk, Maryland.

the Commission brought suit to have the deeds to Merritt set aside.

Appellants assert that the trial court erred when it held that United maintained "a congregational polity with respect to the use and ownership of local church property" and that the appellee, Merritt, was entitled to possession of the church property it had received by gift from Babcock. We agree.

In general, there are two distinct forms of church organization, congregational and hierarchical. Further, within the hierarchical polity lie two subdivisions, namely, episcopal and presbyterial (sometimes called connectional). A general summary of these forms of government is found in footnote 6 of Adams and Hanlon, *Jones v. Wolf: Church Autonomy and The Religion Clauses of the First Amendment,* 128 U.Pa.L.Rev. 1291, 1292 (1980) which provides:

> "A hierarchical organization has been defined by the Supreme Court as a general organization of churches 'having similar faith and doctrine with a common ruling convocation or ecclesiastical head.' Kedroff v. Saint Nicholas Cathedral, 344 U.S. 94, 110 (1952). At least two distinct types of hierarchical polity may be discerned, however. Under the episcopal form of polity, all authority reposes in certain ecclesiastical officers. In a presbyterial arrangement, authority is delegated instead to an ascending succession of judicatories composed of laymen as well as ministers. Unlike episcopal polities, presbyterial churches are representative, inasmuch as both ruling 'elders' and ministers constituting the governing bodies are elected by the congregation. Among the principal denominations with an episcopal form of polity are the Protestant Episcopal Church, the Methodist Church, the Roman Catholic Church, and the Eastern Orthodox Churches. Those churches classified as having a presbyterial form of polity include the United Presbyterian Church of North America, the

Presbyterian Church in the United States, and the Assemblies of God.

"In contrast to the hierarchical form of organization, the central characteristic of a congregational polity is the autonomy of each local entity. While congregational churches sometimes affiliate with other religious organizations, they generally recognize no superior authority over the local congregation. Subject to the rules prescribed for its own self-government, a congregational church is free to affiliate and withdraw from other church organizations at will. Examples of a congregational polity are provided by the numerous Baptist bodies, the Jewish congregations, the Church of Christ, and the Quakers."

The relationship of the hierarchical format of the Presbyterian form of government to ownership of church property was discussed in Annot., 52 A.L.R.3d (1973) where it was stated at 417:

"Although the Presbyterian form of church government is without question hierarchical, there has been a considerable amount of litigation over the right of local Presbyterian churches to withdraw from the general church and retain the use and control of local church property. ... [T]his right is uniformly denied, on the ground that the local Presbyterian Church stands in a hierarchical relationship to the general church, with respect to property matters as in other areas." (footnote omitted).

United's hierarchical structure is set out in The Book of Order. The tribunals are organized in ascending order into (1) the church Session, composed of the elders of local church, (2) the Presbytery, composed of several churches in a geographical area, (3) the Synod, generally composed of all presbyteries within a state, and (4) the General Assembly,

the highest governing body. *See, Jones v. Wolf,* 443 U.S. 595, 621, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).

In Chapter XI of Section 41.08 of "Form of Government" it is provided, in pertinent part:

"8. The church session shall have authority over all of the affairs and activities of the particular church, except such matters as may, by this Form of Government, be specifically accorded to . . . a higher judicatory. The session may from time to time delegate administrative responsibilities in respect to the care and management of church properties and in respect to the financial affairs of the church either to the board of trustees or to the board of deacons or in part to one and in part to the other, subject always to the superior authority and direction of the session."

Thus, the Session is the overseerer of the church property subject to a higher judicatory if The Book of Order extends that authority to the higher judicatory. *Calvary Pres. Church v. Presbytery,* 39 Md. App. 405, 386 A.2d 357, *cert. denied,* 283 Md. 731 (1978). That the Presbytery is given this superior authority with respect to church property is shown by the following provisions of The Book of Order:

"62.11  11. Whenever hereafter a particular church is formally dissolved by the presbytery, or has become extinct by reason of the dispersal of its members, the abandonment of its work, or other cause, such property as it may have, both real and personal, shall be held, used, and applied for such uses, purposes, and trusts as the presbytery may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of The United Presbyterian Church in the United States of America.

"62.12 12. A particular church shall not sell, mortgage or otherwise encumber any of its real property and it shall not acquire real property subject to

an encumbrance or condition without the written permission of the presbytery transmitted through the session of the particular church.

"A particular church shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the particular church."

These provisions establish that while many matters, including the management of church property are initially committed to the Session and congregation of the local church, the actions on this local level remain subject to review by the Presbytery. *Jones v. Wolf, supra,* 443 U.S. at 621.

In *Calvary Pres. Church v. Presbytery, supra,* Calvary voted to disassociate itself from United but sought to retain, possess and control its property. The Presbytery thereafter, pursuant to § 41.15 of The Book of Order replaced the existing Session of Calvary with an Administrative Commission. The Administrative Commission then attempted to assume control over Calvary's property. When the former Session denied them use and control of the property, the Administrative Commission and Presbytery instituted suit. The trial court found that control of the Calvary Church property belonged to United, (the national organization), and not the local Session. This Court affirmed, taking into consideration the legislative provisions set forth in Md. Corp. and Ass'ns. Code Ann. § 5-331 (a) (Cum. Supp. 1977) which provides:

"*Certain charters deemed amended.* — To the extent not prohibited by the Constitution of the United States or of this State, the charter of each religious corporation subject to this part and incorporated before June 1, 1957, is deemed to be amended to conform to the constitution of the United Presbyterian Church in the United States of

America and its successors, as from time to time in effect."

We concluded:

"We think it apparent that Calvary holds title to its physical property for the benefit of United. 'The Form of Government' manifests that all church property is owned by United. When Calvary became associated with United's predecessor, which association continued with United, it did so with the clear understanding that the Calvary church buildings became and continue to be the property of United. Moreover, lest there be any lingering doubt, the Legislature has eradicated it by virtue of Md. Corp. & Ass'ns. Code Ann. § 5-331 (a) (Cum. Supp. 1977)." *Id.* at 420.

In the present case, the trial court attempted to distinguish the *Calvary* precedent by emphasizing the absence of express language in Babcock's charter binding it to United's constitution. The Court stated:

"The Calvary charter expressly pledges allegiance to 'United's' Form of Government and its 'connection' to the Presbytery in Baltimore. The 'Babcock' charter lacks the plain and unequivocal language found in the Calvary charter. Further, in order to ascertain whether or not 'Babcock' had remained a Presbyterian church in accordance with 'the *standards* of the Presbyterian Church in the United States', this court would be required to conduct an impermissible inquiry into matters of faith or ecclesiastical rule, custom or law." [5]

We think the trial court erred in finding that Babcock's

---

5. Article VI of the Calvary charter of 1911 provides:

"ARTICLE VI. The 'Calvary Presbyterian Church of Baltimore City' shall forever remain a Presbyterian Church in doctrine, government, and worship in accordance with the standards of the Presbyterian Church in the United States of American (sic) . . ."

charter, which promised allegiance to the "standards" of the Presbyterian Church, did not encompass a promise to conform to the government of the Presbyterian Church. Despite the absence of an express promise to adhere to the governmental tenets of the national church in the charter, other provisions in the By-Laws reveal an intent to be bound by United's constitution. For example, the article entitled "Organization" in the By-Laws adopted in 1968 sets forth in Section 2:

"*Section 2 — Affiliation*

"This church is affiliated with the United Presbyterian Church in the United States of America and is under the care of and subject to the jurisdiction of the Presbytery of Baltimore. These By-Laws shall be subordinate to the Constitution of the United Presbyterian Church and nothing contained herein shall be interpreted to the contrary."

Further, as emphasized in *Calvary,* the Maryland Legislature has eradicated any doubt as to Babcock's subordination to the national church's constitution as revealed in § 5-331 of the Md. Corp. & Ass'ns. Article.

The appellees additionally attempt to distinguish *Calvary* by asserting that at the time of its "gift" to Merritt, Babcock had not been "dissolved," as in *Calvary,* and thus retained full power to convey its property. This argument fails because it is premised on the unsupported assumption that Babcock had the authority to divest itself of its property in the absence of dissolution. As previously indicated, while the local Sessions do possess various rights and powers with respect to its property, this power is a limited one, subject to the authority of the higher judicatories. The local church voluntarily subjected itself to the jurisdiction of the national body, it cannot avoid its commitment by rushing to be the first to act with reference to its property. The presence or absence of dissolution is not determinative of this issue.

Finally, the trial court erred in finding that Babcock was permitted to make a complete gift of its property under Sec-

tion 62.12 because such gift did not entail a sale, mortgage or encumbrance of its real property as prohibited in Section 62.12. We do not think it was necessary to include terminology referring to every possible disposition of property in order for the intended effect of the section to be evident. The phrase "or otherwise encumber" is sufficiently broad to encompass a prohibition as to a gift of the real property.

We hold that the attempted gifts of property are voidable and they are hereby declared void.

*Judgment and decree reversed. Case remanded for entry of a judgment and decree in accordance with this opinion.*

*Appellees to pay the costs.*