296 Md. 573 (1983)
464 A.2d 1008
BABCOCK MEMORIAL PRESBYTERIAN CHURCH ET AL. AND MERRITT BOULEVARD PRESBYTERIAN CHURCH OF DUNDALK, INC.
v.
THE PRESBYTERY OF BALTIMORE OF THE UNITED PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA ET AL.
[No. 102, September Term, 1982.]
Court of Appeals of Maryland.
Decided August 17, 1983.
Motion for reconsideration filed on September 16, 1983.
Denied on September 27, 1983.
Certiorari denied February 21, 1984.
The cause was argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.
W.J. Williamson, with whom were Mark E. Werner, II and David S. Pearl on the brief, for appellants.
Dorothy M. Beaman and Richard W. Kiefer for appellees.
Joint amici curiae brief of the Presbyterian Church in America and the Evangelical Presbyterian Church filed. Kathleen M. Brown on the brief.
Certiorari denied, Supreme Court of the United States, February 21, 1984.
SMITH, J., delivered the opinion of the Court.
*575 In this case involving a dispute as to ownership and control of church property we shall affirm the decision of the Court of Special Appeals in Presbytery v. Babcock Mem. Pres. Ch., 52 Md. App. 428, 449 A.2d 1190 (1982).
Judge Thompson stated for the Court of Special Appeals:
"Certain disputes, ecclesiastical in nature, arose between Babcock [Memorial Presbyterian Church] and the higher judicatories of [The] United [Presbyterian Church in the United States of America], and at an August 5, 1980 meeting, the Session [of Babcock] voted to recommend to the congregation that appropriate actions be taken to sever Babcock's relationship with [the] Presbytery [of Baltimore] and United. On September 18, 1980, the Presbytery, at its regular monthly meeting, established an Administrative Commission to investigate the alleged disorders at Babcock and to recommend to the Presbytery whether Babcock's Session should be dissolved and replaced with the Administrative Commission as provided in The Book of Order.[3] Meetings were held between the Commission and leadership and congregation of Babcock without resolution of the problem. The Session, on March 14, 1981, made an `absolute and irrevocable gift' of the subject property to Merritt.[4] On March 16, 1981, after the deed of the real property *576 had been recorded in the Land Records of Baltimore County, a letter advising of the gift transfers was hand delivered to Presbytery. On March 23, 1981, at a meeting called by the Session and Board of Trustees of Babcock, the membership voted by a majority of those present (228-6) to withdraw from United and its constituent judicatories. The membership further ratified and adopted as their action, the acts of the Session and the Board of Trustees in conveying the property as gifts to Merritt.
"In late March 1981, the Administrative Commission assumed possession of the Babcock property and required Babcock congregants to leave the premises. On several occasions thereafter, members of Merritt attempted to gain access to the church for purposes of a congregational meeting, but were denied by the appellants. Merritt thereafter filed suit in ejectment and trespass to regain possession of the property and the Presbytery and members of the Commission brought suit to have the deeds to Merritt set aside."
Merritt Boulevard Presbyterian Church of Dundalk, Inc., filed a suit in ejectment against the Presbytery of Baltimore of The United Presbyterian Church in the United States of America and the Administrative Commission designated by it relative to Babcock. The suit sought to gain possession of real property at 8240 Loch Raven Boulevard in Baltimore County, said to have been conveyed to Merritt by the Session and the Board of Trustees of Babcock. The Presbytery and its Administrative Commission then filed a suit in equity against Babcock, its former pastor, its former associate pastor, a number of persons who were members of the deposed Session of Babcock, the various individual members of the Board of Trustees of Babcock, Merritt, and the members of the Session of Merritt. It sought an interlocutory and permanent injunction against interference with the Administrative Commission in the exercise of its authority over the affairs of Babcock, that Merritt and the members of its Session *577 be ordered to transfer and convey to Babcock the real and personal property received by it from Babcock, an accounting, and other relief. Former members of Babcock filed a counterclaim for release of its personal property. The cases were submitted to the Circuit Court for Baltimore County on an agreed statement of facts.
We are further informed by the agreed statement of facts:
"Approximately 50 to 75 members of the Babcock congregation who remain members of UNITED met at Faith Presbyterian Church, 5400 Loch Raven Boulevard, until June 21, at which time they resumed UNITED worship services and other related activities in the church building at 8240 Loch Raven Boulevard. Approximately 250 to 300 of those who have withdrawn from UNITED are meeting at the Loch Raven Elementary School. Babcock has not been dissolved by the Presbytery or become extinct by reason of the dispersal of its members, the abandonment of its work or other cause."
The trial court found "that `United' maintains a congregational polity with respect to the use and ownership of local church property" and that the original Babcock Session and its Board of Trustees were legally entitled to make absolute and irrevocable gifts of that church's real and personal property to Merritt. An appeal followed to the Court of Special Appeals which reversed. We granted a writ of certiorari.

I
The Park Presbyterian Church of Baltimore City was incorporated in 1891. Art. VI of its charter provided that it should "forever remain a Presbyterian Church in accordance with the Standards of the Presbyterian Church of the United States." It began as a mission of Brown Memorial Presbyterian Church, a member of the Presbytery of *578 Baltimore, under the leadership of that church's pastor, the Rev. Maltbie D. Babcock. It was originally located at North and Madison Avenues in Baltimore City on a lot purchased by funds provided as a part of Brown Memorial's mission effort. Assistance in the erection of its church building was provided by friends of Dr. Babcock at Brown Memorial and by Brick Presbyterian Church in New York City. Virtually from its inception Park was a member of the Presbytery of Baltimore. The Presbytery of Baltimore was part of The Presbyterian Church in the United States of America which later merged with The United Presbyterian Church of North America to form the church now known as The United Presbyterian Church in the United States of America.
Park was incorporated under our general religious corporation law now embodied in Maryland Code (1975) §§ 5-301 to -313, Corporations and Associations Article.[1] Relative to what was then Code (1957) Art. 23, §§ 256 to 270, upon which those sections are based, Judge Barnes commented for the Court in Md. & Va. Eldership v. Sharpsburg, 249 Md. 650, 657, 241 A.2d 691 (1968) (Eldership I), vacated, 393 U.S. 528, reaff'd, 254 Md. 162, 254 A.2d 162 (1969) (Eldership II), appeal dismissed, 396 U.S. 367 (1970), that the statute "is based upon and largely follows the original legislation on this subject, i.e., the Act of 1802, chapter 111." We know not what the law of the Church was at the time of Park's incorporation but today § 62.04 of United's Book of Order requires each local church to be incorporated unless forbidden by state law.
Despite inferences to the contrary which may be drawn from corporate names of some churches, "[u]nder the Maryland system of incorporating religious societies the trustees and not the congregation constitute the corporation." Phillips v. Insley, 113 Md. 341, 349, 77 A. 850 (1910), *579 citing Bethel Church v. Carmack, 2 Md. Ch. 143 (1849), and Stubbs v. Vestry of St. John's, 96 Md. 267, 275, 53 A. 917 (1902). Phillips was quoted in Gildenhorn v. Columbia R.E. Title, 271 Md. 387, 404, 317 A.2d 836 (1974). Numerous other states follow a similar procedure for church corporations. See C. Zollmann, American Church Law § 106 (1933).
In 1901 the name of Park was changed to Babcock Memorial Presbyterian Church of Baltimore City. That name, after relocation at 8240 Loch Raven Boulevard, was changed to Babcock Memorial Presbyterian Church.
At the time of the move to Loch Raven Boulevard the Presbytery made available to Babcock residual funds of Olivet Presbyterian Church of Canton. A plaque memorializing that fact appears in the narthex of Babcock.
In 1968 Babcock adopted a set of by-laws, Article 1, § 2 of which provides:
"This church is affiliated with the United Presbyterian Church in the United States of America and is under the care of and subject to the jurisdiction of the Presbytery of Baltimore. These By-Laws shall be subordinate to the Constitution of the United Presbyterian Church and nothing contained herein shall be interpreted to the contrary."
The original deed to Babcock for the Loch Raven Boulevard land is to "The Babcock Memorial Presbyterian Church of Baltimore City, a corporation of the State of Maryland...." Neither in the granting clause nor in the habendum clause is there any restriction of any kind. On May 15, 1980, the Board of Trustees and the Session of Babcock conveyed the land in question, without consideration, to Conduit, Inc., which in turn reconveyed the land in question to the named trustees of Babcock "for the uses and purposes and with the powers and subject to the limitations hereinafter set forth...." In the habendum clause it is specified that the conveyance to the trustees is "in trust for the following uses and trust purposes and with the powers and subject to the limitations hereinafter set *580 forth" which include that they are to "hold title to the property... for the use and benefit of the majority of the active communicant members of that congregation presently identified as the congregation of the [sic] The Babcock Memorial Presbyterian Church," with further provisions as to who shall be members, for election of trustees, and notices of meetings. The trustees joined in the deed from Conduit "for the purpose of evidencing the assent of said church to the provisions [t]hereof" and also "for the express purpose of consenting to and accepting the trust and confidence imposed upon them." No consent of the Presbytery was obtained for the deed to Conduit or the deed to Merritt although § 62.12 of The Book of Order of United provides that a church shall not sell, mortgage or encumber its real property without the Presbytery's consent.

II
In arguing for a reversal of the decision of the Court of Special Appeals, Babcock and Merritt contend that the latter court failed to employ the neutral principles of law doctrine as enunciated by this Court in Eldership I and II, that in awarding the property of the local church to the denomination the court followed the theory of implied trust declared by this Court in Eldership I "as not being the law of this state," that it erred in awarding the property to the Presbytery "in the absence of a specific finding that the deeds, local church charter, or constitution of the United Presbyterian Church contained language in a `legally cognizable form' expressing a trust or causing a reverter or forfeiture of the property of the local church to United in the event of a schism or withdrawal by the local church," and that it failed to comply with Maryland Rule 1086 in reviewing the findings of fact of the trial court. Since there was a stipulation between the parties as to the facts, there was no error on the latter point.

*581 III
In Eldership I, 249 Md. 650, Judge Barnes said for the Court:
"In considering questions in regard to the use of church property it is usually important, in the absence of express language in the deed conveying the property or making the gift, to consider the `polity' or form of church government which the particular denomination has. In the note in 75 Harv. L. Rev., at pages 1143-4, the three general types of church polity are defined as follows:
`At least three kinds of internal structure, or "polity," may be discerned; congregational, presbyterial, and episcopal. In the congregational form, each local congregation is self-governing. The presbyterial polities are representative, authority being exercised by laymen and ministers organized in an ascending succession of judicatories  presbytery over the session of the local church, synod over presbytery, and general assembly over all. In the episcopal form power reposes in clerical superiors, such as bishops. Roughly, presbyterial and episcopal polities may be considered hierarchical, as opposed to congregational polities, in which the autonomy of the local congregation is the central principle.' (Footnotes omitted.)
"In many of the hierarchical churches there may be provisions in their Constitutions, Canon Law or other controlling documents or statutes which make it clear that the property is held in trust for the uses of the parent church and its discipline and appointments. See, for example, Article 23, Section 313 (e) in regard to the holding of property in the Methodist Church. There may be a requirement that the local church include provisions in the deeds *582 to its property that it is held in trust for the parent church in conformity to its worship, doctrine and discipline and, upon a departure therefrom, the property will revert to the hierarchical body. Even in the absence of such an express provision in the deeds to the local church property, there may be an implied consent by the local church that the local property is so held if the constitution, by-laws, canon law or statute provide to that effect. It thus appears that there are three methods by which a hierarchical denomination may maintain control of local church property:
"1. It may require reverter clauses in the deeds to the property of the local churches.
"2. It may provide in its constitution or by some other authoritative source for the reverting of the local church property to the hierarchical body upon withdrawal by a local congregation with an implied consent by the local church to this provision.
"3. It may obtain from the General Assembly an act providing for such a result." 249 Md. at 662-63.
Judge Thompson stated for the Court of Special Appeals:
"United is organized and operated under a constitution which consists of two parts: `The Book of Confession' and `The Book of Order.' The Book of Order contains three parts, namely: the `Directory of Worship,' the `Form of Government,' and the `Book of Church Discipline.' That part of the constitution at issue is the `Form of Government.' United is an association of local United Presbyterian churches organized into a hierarchical structure consisting of four distinct bodies known as judicatories (tribunals of ecclesiastical authority). These tribunals in ascending order of authority, according to the powers given or reserved to them by The Book of Order, are: (1) the Session, which has authority over all the affairs and activities of the particular *583 church, (2) the Presbytery, composed of all of the United Presbyterian Churches in a geographic area, (3) the Synod, generally composed of the Presbyteries in a given state or region, and (4) the General Assembly, the highest governing body within United.
"The Presbytery of Baltimore is a non-profit, unincorporated association, its principal office being in the City of Baltimore. Its jurisdiction entails the supervision and care of those United Presbyterian Churches located in the City of Baltimore, central and western Maryland." 52 Md. App. at 430-31.
* * *
"The relationship of the hierarchical format of the Presbyterian form of government to ownership of church property was discussed in Annot., 52 A.L.R.3d (1973) where it was stated at 417:
`Although the Presbyterian form of church government is without question hierarchical, there has been a considerable amount of litigation over the right of local Presbyterian churches to withdraw from the general church and retain the use and control of local church property.... [T]his right is uniformly denied, on the ground that the local Presbyterian Church stands in a hierarchical relationship to the general church, with respect to property matters as in other areas.' (footnote omitted).
"United's hierarchical structure is set out in The Book of Order. The tribunals are organized in ascending order into (1) the church Session, composed of the elders of local church, (2) the Presbytery, composed of several churches in a geographical area, (3) the Synod, generally composed of all presbyteries within a state, and (4) the General Assembly, the highest governing body. See, Jones v. *584 Wolf, 443 U.S. 595, 621, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).
"In Chapter XI of Section 41.08 of `Form of Government' it is provided, in pertinent part:
`8. The church session shall have authority over all of the affairs and activities of the particular church, except such matters as may, by this Form of Government, be specifically accorded to ... a higher judicatory. The session may from time to time delegate administrative responsibilities in respect to the care and management of church properties and in respect to the financial affairs of the church either to the board of trustees or to the board of deacons or in part to one and in part to the other, subject always to the superior authority and direction of the session.'
"Thus, the Session is the overseer of the church property subject to a higher judicatory if The Book of Order extends that authority to the higher judicatory. Calvary Pres. Church v. Presbytery, 39 Md. App. 405, 386 A.2d 357, cert. denied, 283 Md. 731 (1978). That the Presbytery is given this superior authority with respect to church property is shown by the following provisions of The Book of Order:
`62.11 11. Whenever hereafter a particular church is formally dissolved by the presbytery, or has become extinct by reason of the dispersal of its members, the abandonment of its work, or other cause, such property as it may have, both real and personal, shall be held, used, and applied for such uses, purposes, and trusts as the presbytery may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of The United Presbyterian Church in the United States of America.

*585 `62.12 12. A particular church shall not sell, mortgage or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance or condition without the written permission of the presbytery transmitted through the session of the particular church.
`A particular church shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the particular church.'
"These provisions establish that while many matters, including the management of church property are initially committed to the Session and congregation of the local church, the actions on this local level remain subject to review by the Presbytery. Jones v. Wolf, supra, 443 U.S. at 621." 52 Md. App. 434-36.
As was observed by the Supreme Court of Delaware in Pencader P. Church v. Gibson et al., 26 Del. Ch. 375, 385, 22 A.2d 782 (1941), "The denominational character of the religious society or congregation was plainly intended to affect the legal nature of the corporation authorized to be formed."
The Supreme Court of Illinois said in Lowe v. First Presbyterian Church, 56 Ill.2d 404, 308 N.E.2d 801, cert. denied, 419 U.S. 895 (1974):
"The United Presbyterian Church is one of two substantial Presbyterian church bodies in this country. (Annot., 52 A.L.R.3d 324, 418 n. 20, citing G. Weigel, Churches in North America (Schocken Books 1965, p. 34).) There are other smaller Presbyterian church bodies, all of similar governmental structure. That structure consists of a series of ascending bodies called Judicatories. At the lowest level is the Session composed of trustees, *586 deacons and other members of the local congregation. At the secondary level is a Presbytery made up of many local Presbyterian churches such as the Presbytery of Chicago, one of the plaintiffs here. At the third level is a Synod comprised of a number of Presbyteries, and the supreme governing body is the General Assembly, the actions of which are controlling at all lower levels. Plaintiffs' allegation that this is the structure of the United Presbyterian Church is not contested, and the nature of the Presbyterian church governmental structure has been demonstrated in a series of cases collected in the annotation in 52 A.L.R.3d 324, at 417-423. It is clear that the United Presbyterian Church is hierarchical in governmental form in that each judicatory has control of those below it. The significance here of this structure is that each member Presbyterian church is subject to the rules and directions of its Presbytery, Synod and Assembly." 56 Ill.2d 411-12.
In Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1872), the Supreme Court said:
"The questions which have come before the civil courts concerning the rights to property held by ecclesiastical bodies, may, so far as we have been able to examine them, be profitably classified under three general heads, which of course do not include cases governed by considerations applicable to a church established and supported by law as the religion of the state.
"1. The first of these is when the property which is the subject of controversy has been, by the deed or will of the donor, or other instrument by which the property is held, by the express terms of the instrument devoted to the teaching, support, or spread of some specific form of religious doctrine or belief.

*587 "2. The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.
"3. The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." 80 U.S. at 722-23.
Article V, § 3 of Babcock's by-laws provides:
"The Board of Trustees shall be the body politic or corporate to act as Trustees in the name and behalf of the Babcock Memorial Presbyterian Church to manage the estate, property, interest and inheritance of the same, and to exercise all powers granted to religious corporations by the laws of the State of Maryland subject to the provisions of the Constitution of the United Presbyterian Church in the United States of America."
It is obvious that the case at bar falls in the third class set forth in Watson. Babcock was organized as a Presbyterian Church. Virtually from its inception it has continued as an integral part of a larger church body. It has been the recipient as a Presbyterian Church of gifts by virtue of its affiliation. It has recognized the authority and control of the higher judicatories of United. In Eldership I, 249 Md. 650, Judge Barnes said for the Court:
"What was intended was to provide for the formation of religious corporations for local congregations which would hold, control and have power to dispose of the property of the religious corporations. The Act of 1802 and its successor acts *588 in no way sought to establish any ecclesiastical polity. This was left to the corporations themselves. By the nature of the law in regard to the formation of corporations generally, the religious corporation formed under it is controlled by trustees elected by the local membership. This is true of all member corporations. This does not mean that the religious corporation thus formed may not by contract  express or implied  adopt a presbyterial or episcopal polity and, if this is done, may provide for the holding of the local church property subject to the provisions of the constitution, charter or by-laws of a denomination and the action of the authoritative agencies of such a denomination. This, however, is accomplished by the will and action of the local corporation and is in no way imposed by the State through its General Religious Corporation Law." 249 Md. 673-74 (emphasis in original).
In Art. I, § 2 of its by-laws Babcock recognized its affiliation with The United Presbyterian Church in the United States of America. In that section and in Art. V, § 3 it recognized that it is subject to the constitution of United and its trustees are to exercise their powers subject to that constitution. In Art. I, § 2 of those by-laws Babcock recognized that it is "under the care of and subject to the jurisdiction of the Presbytery of Baltimore." Thus by contract Babcock has adopted a presbyterial polity. We conclude, therefore, that the Court of Special Appeals did not err in its determination that Babcock is not a congregational church but the relationship here is one that is hierarchical in nature. Accordingly, the Presbytery has an interest in this property.
Eldership I, 249 Md. 650, has been recognized or noted as the key neutral principles of law doctrine case. See Jones v. Wolf, 443 U.S. 595, 602-03, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Under it we are obliged to apply neutral principles of law in determining the outcome of this controversy. Under the neutral principles of law doctrine we are not concerned *589 with any dispute as to church doctrine. Under the neutral principles of law doctrine in Eldership I and II the Court examined the deed, the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property.
In Eldership I, 249 Md. at 664, the Court noted that the constitution of the parent church body there contained no provision relative to control of local church property by the parent church. Here there is such a provision.
Zollmann, op. cit., § 154 states relative to by-laws:
"Since by-laws validly passed are a part of the law governing the corporation and its members, they must be obeyed by all concerned. Where a committee, therefore, is empowered only to expend such sums of money as the society shall place at its disposal, such committee cannot incur large obligations in employing counsel to unmask the unfitness of its pastor.
"A person who voluntarily joins a church, tacitly agrees to be bound by all the rules and regulations of such church, and will not afterwards be allowed wholly to ignore and disregard such rules and regulations. As to all matters pertaining to the church, he is clearly bound by the rules and regulations of the church, unless the same are clearly illegal." Id. at 157.
The trustees of Babcock were bound by their own by-laws to follow the established mandates of United. It will be recalled that under § 62.12 of the Book of Order of United a church may not sell, mortgage or otherwise encumber any of its real property without the written permission of the Presbytery transmitted through the Session of the particular church nor may it lease its real property used for the purposes of worship or lease for more than five years any of its other real property without the written permission of the Presbytery transmitted through the Session of the particular church. *590 Section 62.08 also refers to obtaining permission from the Presbytery to sell, mortgage, or lease church property. We regard the restriction as equivalent to saying that property could not be alienated by a local church without permission of the Presbytery. To hold otherwise is to permit accomplishing by subterfuge what could not be done directly. We conclude that if the local church under United's Book of Order could not sell property without permission, it could not give it away. More importantly, however, applying neutral principles of law, the church corporation lacked power under Maryland corporation law to make the gift. It is elementary that a corporation has only such powers as are expressly granted by its charter or by statute and such as may impliedly be derived from its corporate purposes. Babcock was granted no power by its charter to dispose of all or any part of its assets by gift. The attempted gift here was not in accord with the corporate purpose of Babcock. The action here is analogous to that referred to in a somewhat different context in Fairmount Pres. Ch. v. Presbytery of Holston, 531 S.W.2d 301, 306 (Tenn. App. 1975), of "a corporation, for example, ... chartered for the purpose of promoting the interest of boys, in accord with the standards of the Boy Scouts of America" which might attempt to divert its property "to the use of Boys' Clubs or Girl Scouts, or any other organization." Cf. Polen v. Cox, 259 Md. 25, 267 A.2d 201 (1970).
It follows that the Court of Special Appeals was correct in its decision.
Judgment affirmed; appellants to pay the costs.
NOTES
[3] "Section 41.15 of The Book of Order provides:

"`15. Whenever, after a thorough investigation, and after full opportunity to be heard has been accorded to the session in question, the presbytery of jurisdiction shall determine that the session of a particular church is unable or unwilling to manage wisely the affairs of its church, the presbytery may appoint a commission composed of ministers and ruling elders, with the full power of a session. This commission shall take the place of the existing session, if any, which shall cease to act until such time as the presbytery shall otherwise direct.'
[4] "Merritt Boulevard Presbyterian Church of Dundalk, Inc., was incorporated on April 15, 1980 as an unaffiliated Presbyterian Church. It has fourteen members and its principal place of worship is in Dundalk, Maryland." 52 Md. App. 431-33.
[1] At the time of Park's incorporation the General Assembly had not enacted legislation relative to Presbyterian churches such as that relative to the United Presbyterian Church in the United States of America now found in Code (1975, 1982 Cum. Supp.) §§ 5-329 to -332, Corporations and Associations Article. We do not consider those sections in reaching our decision here. If we were to do so it would reinforce our conclusions.