John FOSS, Calvin Willemsen, Fred Schafer, Francis Parker, Roger Straatmeyer, Warren Ludeman, Ebenezer United Presbyterian Church, an ecclesiastical congregation, and the Presbytery of South Dakota of the United Presbyterian Church in the United States of America, a corporation, Plaintiffs and Appellants,

v.

Virgil DYKSTRA, Leroy Fett, Robert Steadman, Elroy Bossman, Fred Haan, Alvin Sinning, Joseph T. Miller, Stanley L. Plucker, Wendell H. Strasser, Limbertus Kingma, Wayne Kock, Duane Devries, Alvin Haan, J. Harley Miller, Keith Beeners, Joel Begeman, Jeff Haan, Paul Bossman, Phillip Fett and Ebenezer United Presbyterian Church of Lennox, S.D., a corporation, Defendants and Appellants.

Nos. 13678, 14006.

Supreme Court of South Dakota.

Argued Sept. 14, 1983.

Decided Nov. 23, 1983.

Russell R. Greenfield and James E. McMahon of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiffs and appellants.

W.J. Williamson of Williamson and Taber, Greenville, Ala., Richard Bogue of Randolph & Bogue, Canton, for defendants and appellants.

MORGAN, Justice.

These actions arise from the Ebenezer United Presbyterian Church's withdrawal from the denomination of the United Presbyterian Church in the United States of America (UPCUSA). The faction of the Ebenezer Church remaining loyal to UPCUSA and the South Dakota Presbytery initiated this action against the schismatic faction consisting of named defendants and the Ebenezer Church corporation, seeking control of the local church's property.[1] For the purposes of this opinion, we will refer to the former loyalist group and Presbytery as National Church and to the latter schismatic group as Local Church.

In the course of the proceedings below, one trial judge entered an order that Local Church had violated a temporary injunction by paying out money from the church account for attorney fees and entered a judgment against the members of Local Church in favor of National Church. Pursuant to our remand, another trial judge subsequently awarded possession and control of the local property to Local Church. Both Local and National Churches appeal from the respective orders and we affirm in part, reverse in part and remand.

Local Church was organized in 1889 and became a nonprofit corporation in 1945. At that time, Local Church was affiliated with the denomination known as the Presbyterian Church in the United States of America. In 1958, that denomination merged with another denomination to form UPCUSA. On November 24, 1980, due to doctrinal differences, a majority of the members of Local Church by vote of 198 to 32 adopted a "Resolution of Secession" to sever affiliation with UPCUSA. National Church responded by initiating this action to obtain use, control, and possession of

---

1. This case was before this court in *Foss v. Dykstra,* 319 N.W.2d 499 (S.D.1982). There, Local Church appealed from a judgment awarding the local property to National Church. This court remanded with instructions to the trial court to determine ownership of the property based upon the "neutral principles of law approach" recognized by the United States Supreme Court in *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).

Local Church's real and personal property. At the first trial, the trial court entered judgment for National Church. This court reversed and remanded with instructions to the trial court. *Foss v. Dykstra,* 319 N.W.2d 499 (S.D.1982). At the rehearing, the trial court entered a judgment for Local Church. National Church appeals, raising three issues: (1) whether the "neutral principles of law" approach should be used when the church involved is a hierarchical organization; (2) whether the trial court correctly applied the "neutral principles of law" approach; and (3) whether National Church is entitled to the use and control of the local property.

The first issue raised on this appeal, whether the "neutral principles of law" approach should be applied herein, was thoroughly briefed and argued the first time this case was before this court. *Foss v. Dykstra, supra.* Our decision adopted the general rule that when a hierarchical church is involved in a property dispute that the neutral principles of law approach applies. *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).[2] National Church argues that for this court to proceed under the "neutral principles of law" approach is, in effect, interfering with the free exercise of religion. This contention, however, was settled by the United States Supreme Court in *Jones, supra.* Moreover, since this issue was thoroughly briefed and argued and disposed of on the first appeal, we decline the invitation to again address it.

The second and third issues as stated by National Church can be combined into one issue: whether the trial court correctly applied the neutral principles of law approach. This court described that approach in *Foss, supra,* as follows:

The neutral-principles approach calls for a completely secular examination by civil courts into church documents, deeds to the property in question, state statutes and other relevant evidence to determine

ownership. The key to the neutral-principles approach is that such determination is to be made "exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges."

319 N.W.2d at 500 quoting from *Jones,* 443 U.S. at 603, 99 S.Ct. at 3025, 61 L.Ed.2d at 785. According to the United States Supreme Court, this approach requires that "a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining *whether the document indicates that the parties have intended to create a trust." Jones,* 443 U.S. at 604, 90 S.Ct. at 3024, 61 L.Ed.2d at 785 (emphasis added).

The trial court made certain significant findings of fact which we summarize as follows. Local Church acquired certain real and personal property and no agency or court of UPCUSA above local level made any financial contribution thereto. Record title is vested in the local church corporation, organized and existing under the laws of South Dakota. National Church has no proprietary or contractual interest in the property under the provisions of the UPCUSA constitution or relevant documents of title. Neither Local Church's articles of incorporation nor two amendments thereto mention any denominational affiliation. Prior to the adoption of the resolution of secession there was no provision in UPCUSA's constitution prohibiting withdrawal of a local church or imposing any penalty or forfeiture of property on withdrawal, nor any provision imposing a trust on local church property in favor of National Church.

The trial court concluded as a matter of law that there was neither any express or implied trust in favor of National Church giving it control over the property; that Local Church was free to sever ecclesiastical connections with UPCUSA without penalty or forfeiture of the property; and that

**2.** For a general discussion of property rights between a local church and a national church,

*see* Annot., 52 A.L.R.3d 324 (1973).

all civil indicia evince ownership of the property in Local Church.

Our examination of the deeds to the local property shows a number of conveyances to the Ebenezer Presbyterian Church of Lennox. None of these deeds indicate any interest or trust relationship in National Church.

Two mortgage instruments are contained in the record. The oldest mortgage, which has been paid and satisfied, was by Local Church to UPCUSA. This previous mortgage, dated November 17, 1960, contained a provision that:

> This mortgage and the obligation which it secures shall become due and payable immediately upon the mortgagor's severing its denominational connection with the General Assembly of the United Presbyterian Church in the United States of America . . . .

■ If this action had occurred while this mortgage was in effect, the only right National Church would have had was to accelerate the balance due. Of course, Local Church could then have paid the balance due and kept the property. Significantly, the trial court found the language of this provision to be a recognition by UPCUSA of the right to withdraw. We agree. The current mortgage on the property is not to UPCUSA nor does the current mortgage mention UPCUSA. Thus, as with the deeds, examination of the current mortgage does not indicate any interest in National Church.

■ The articles of incorporation of Local Church show that it was incorporated in 1945 as the Ebenezer Presbyterian Church of Lennox, South Dakota "for the purpose of maintaining and promoting religious worship according to the general usages of the *Ebenezer Presbyterian Church.*" (Emphasis added.) The articles of incorporation show no connection between Local Church and UPCUSA. National Church contends that a name change by Local Church in 1974 to Ebenezer *United* Presbyterian Church (emphasis added) demonstrates a close relationship between Local Church and UPCUSA. Since the denominational change to UPCUSA occurred in 1958, the name change by Local Church sixteen years later does not demonstrate the close relationship alleged by National Church. Further, the name change certainly does not give rise to a trust relationship between UPCUSA and Local Church.

SDCL chs. 47–22 through 47–28 govern the affairs of nonprofit corporations such as Local Church. None of these statutes create a trust relationship between National Church and Local Church.

The last source we examine to determine the existence of a trust relationship between National Church and Local Church is UPCUSA's constitution, the Book of Order. National Church points to four provisions in the Book of Order which it claims give it an interest in Local Church's property. Section 41.07 of the Book of Order states that the Session (comprised of the minister and trustees of Local Church) shall have exclusive authority over the church property.[3] Section 41.15 of the Book of Order provides that a Presbytery (comprised of the Presbyterian local churches in the area) may appoint a commission to replace the Session of a local church.[4] Section 62.11

---

3. Section 41.07 of the Book of Order provides:
   Subject to the provisions of the Directory for Worship, the session shall have and exercise exclusive authority over the worship of the congregation, including the musical service; and shall determine the times and places of preaching the Word and all other religious services. It shall also have exclusive authority over the uses to which the church buildings and properties may be put, but may temporarily delegate the determination of such uses, subject always to the superior authority and direction of the session.

4. Section 41.15 of the Book of Order provides:
   Whenever, after a thorough investigation, and after full opportunity to be heard has been accorded to the session in question, the presbytery of jurisdiction shall determine that the session of a particular church is unable or unwilling to manage wisely the affairs of its church, the presbytery may appoint a commission composed of ministers and ruling elders, with the full power of a session. This commission shall take the place of the existing session, if any, which shall cease to act

provides for disposition of local church property when a local church is dissolved by the Presbytery.[5] Section 62.12 prohibits a local church from encumbering its real property without permission from the Presbytery.[6]

National Church argues that provisions similar to these provisions were discussed in *Babcock Memorial Presbyterian Church v. The Presbytery of Baltimore,* 296 Md. 573, 464 A.2d 1008 (1983), where the court awarded control of local property to the Presbytery. *Babcock,* however, is clearly distinguishable inasmuch as it was based upon language in the local church's charter and by-laws which is distinct from the language here. In *Babcock,* the local church's charter provided it should forever remain in accordance with the standards of the denomination. In contrast, here, Local Church's articles of incorporation state its purpose is for the usage of Local Church. Clauses similar to that clause in *Babcock's* local church's charter were also the basis for similar decisions in other cases cited by National Church. *Protestant Episc. Church, Etc. v. Graves,* 83 N.J. 572, 417 A.2d 19 (1980); *Calvary Presb. Ch. v. Presbytery of Baltimore, Etc.,* 39 Md.App. 405, 386 A.2d 357 (1978). *But see, Presbytery of Riverside v. Community Church,* 89 Cal.App.3d 910, 152 Cal.Rptr. 854 (1979). *Babcock, supra; Calvary Presb. Ch., supra;* and *Protestant Episc. Church, su-*

*pra,* are all distinguishable from the present case.

Additionally, provisions similar to three of these sections have been examined by the United States Supreme Court. In *Jones v. Wolf, supra,* and *Presbyterian Church v. Hull Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969), the Supreme Court examined provisions similar to Sections 41.07, 41.15, and 62.11. The Supreme Court found that none of these sections were dispositive of the neutral principles of law approach. The Georgia Supreme Court also examined these similar provisions when reviewing *Hull, supra,* on remand. The Georgia court held that these similar provisions did not give rise to a trust in favor of the denomination. *Presbyterian Ch. in U.S. v. Eastern Heights Pres. Ch.,* 225 Ga. 259, 167 S.E.2d 658 (1969).

█ We agree. In our close examination of these three sections, and also the fourth section stated above, we cannot find language creating a trust in favor of National Church. We note that these parties stipulated that the Book of Order does not impose an *express* trust on Local Church's property. In reviewing these four sections to determine whether there was an *implied* trust, we find that these provisions neither singularly nor jointly create a trust in favor of National Church.[7] Although these

until such time as the presbytery shall otherwise direct.

5. Section 62.11 of the Book of Order provides:
   Whenever hereinafter a particular church is formally dissolved by the presbytery, or has become extinct by reason of the dispersal of its members, the abandonment of its work, or other cause, such property as it may have, both real and personal, shall be held, used, and applied for such uses, purposes, and trusts as the presbytery may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of The United Presbyterian Church in the United States of America.

6. Section 62.12 of the Book of Order provides:
   A particular church shall not sell, mortgage or otherwise encumber any of its real proper-

ty and it shall not acquire real property subject to an encumbrance or condition without the written permission of the presbytery transmitted through the session of the particular church.
   A particular church shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the particular church.

7. According to the trial transcript, after Local Church withdrew, UPCUSA added an express trust provision to the Book of Order. This new section provides "that in an incorporated church, the officers hold title 'to church property for the benefit of the corporation and the Presbyterian Church in the United States.'" *Presbytery of Middle Tennessee v. The Madison Presbyterian Church, Inc.,* No. 82–1819–I, slip op. at 5 and 6 (Tenn.Ch.App. August 5, 1983)

provisions may limit a local church's use of the property while it is a member of the denomination, the language does not go far enough to constitute trust or reversionary terms such as the Supreme Court was seeking in *Jones, supra.*

■ Accordingly, from our scrutiny of the deed, the corporate charter, the state statutes, and the Book of Order, we find that none of these create a trust over the local church property in favor of National Church. We affirm the trial court's holding in this respect.

■ We next examine National Church's argument that the trial court failed to properly consider which faction of Ebenezer Church is entitled to the use and control of the property, the schismatic majority or the loyal minority. Initially, National Church contends that the trial court failed to address the issue in the judgment or anywhere else in the record. We agree it does not appear that the trial court made any findings or conclusions on that specific issue but that is not surprising because it was not raised at the trial level. Having lost at the trial level, National Church retained the present attorneys who then raised the issue for the first time on a motion for new trial.[8]

In response to the motion, the trial court stated to National Church's counsel: "... you are going to have to show me, and I don't believe you can, that the majority vote in this particular instance doesn't rule. Because everything I have found in the South Dakota statutes says that it can. And I have not seen anything in the Book of Order of the national church, or the Articles of the local congregation to indicate otherwise."

The judgment in essential part stated: "The beneficiaries (owners) of the property here at issue is the local congregation—The Ebenezer United Presbyterian Church of Lennox, South Dakota, a corporation as controlled and governed by the defendants named herein and the Defendants are entitled to the use, possession and control of said real and personal property without interference by Plaintiffs."

Later, in argument on the motion, the trial court stated: "Well, the present record is, and I think the Supreme Court would surely get that from the record, when I awarded the property to the local congregation, I was doing so to the—giving to the people who were in the majority, the 198 members that voted to secede from the church."

From the foregoing it is obvious that the trial court did in fact rule on the question of majority issue, that its ruling was based on statutes, the constitution of UPCUSA and the articles of Local Church. We next examine whether or not it was correct.

National Church argues that this court must find that the minority members are the "true representatives" of Local Church since they adhere to the religious doctrine of UPCUSA. This approach, however, would necessitate this court's review of the religious doctrine involved in this dispute. Such an approach is directly contrary to the neutral principles rule.

■ The Supreme Court stated in *Jones* that "[m]ajority rule is generally employed in the governance of religious societies." 443 U.S. at 607, 99 S.Ct. at 3027, 61 L.Ed.2d at 787 (citation omitted). This is exemplified by the Book of Order which states at Section 35.01 "that a majority shall govern ...." Additionally, SDCL 47–23–12[9] pro-

quoting from Section 6–2 of the Book of Order (1982 ed.). UPCUSA's adoption of this express trust provision provides additional support to our conclusion that the Book of Order as it existed on November 24, 1980, did not contain provisions creating a trust over local property.

**8.** The motion for new trial set out some eight grounds centered around (6) and (7) of SDCL 15–6–59(a). We find that the trial court was correct in overruling the motion for a new trial. The grounds for new trial are specific. It is not

a vehicle to drag litigation on and on by changing counsel and introducing new issues. In this instance, however, since the trial judge did specifically rule on the record on the issue of majority rule and both parties have briefed and argued the issue, for the purpose of clarification of the judgment entered below, we will consider the issue.

**9.** SDCL 47–23–12 provides, in pertinent part: A majority of the votes entitled to be cast on a matter to be voted upon by the members

vides that in nonprofit corporations a majority of the votes is necessary to adopt the matter voted upon. Since majority representation is the well-accepted rule, *Jones, supra; see, e.g., Piletich v. Deretich,* 328 N.W.2d 696 (1982); *Jones v. Wolf,* 224 Ga. 388, 260 S.E.2d 84 (1979), and is indeed the law in this state, SDCL 47–23–12, we hereby adopt the presumption of majority representation.

■ This presumption of majority representation can be overcome by express provision in the articles of incorporation or by-laws, *see* SDCL 47–23–12, or the constitution of the general church, *see Jones, supra; Piletich, supra; Jones v. Wolf, supra.* Our examination of the documents on the record in the present case reveal that they do not contain any provisions which overcome this presumption.

Here, the majority of members of Ebenezer United Presbyterian Church voted to withdraw from UPCUSA. Since there are no express provisions to overcome this presumption of majority representation, this majority represents Ebenezer United Presbyterian Church. Accordingly, we affirm trial court's decision awarding control of the local church property to Local Church.[10]

■ The remaining issue to be determined on this appeal is whether Local Church violated the temporary injunction restricting its use of the local property. Soon after this action was initiated, Judge Ulrich of the First Judicial Circuit entered a temporary injunction restricting Local Church's use of this property. Thereafter, Local Church paid $20,546.53 to the attorneys representing them in this action. Subsequent to National Church's motion that Local Church had violated the tempo-

rary injunction, Judge Christensen ordered the individually named defendants representing Local Church to pay National Church $20,546.53. Local Church appeals from that order.

Above, we determined that Local Church is entitled to control over this local church property and that National Church has no interest therein. Since National Church has no interest in this property, it has no interest in this $20,546.53. Local Church is entitled to control of this sum. Accordingly, we reverse this order of the trial court and remand with instructions to vacate the order.

We affirm in part, reverse in part, and remand.

All the Justices concur.

---

present or represented by proxy at a meeting at which a quorum is present shall be necessary for the adoption thereof unless a greater proportion is required by chapters 47–22 to 47–28, inclusive, the articles of incorporation, or the by-laws.

**10.** We take note of two of our previous cases in this area, *Reformed Bethanien Church v. Ochs-*

*ner,* 72 S.D. 150, 31 N.W.2d 249 (1948) and *Presbytery of Huron v. Gordon,* 68 S.D. 228, 300 N.W. 33 (1941). While these cases are factually distinguishable, they also are legally distinguishable as pre-*Hull, supra,* and pre-*Jones, supra.* Thus, we overrule *Reformed Bethanien Church* and *Presbytery of Huron* to the extent that they conflict with our decision herein.